## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PRIORITY HEALTHCARE CORPORATION, | : | |
| | : | |
| Plaintiff, | : | C.A. No. 08-00148-JJF |
| | : | |
| v. | : | |
| | : | |
| AETNA SPECIALITY PHARMACY, LLC and AETNA HEALTH HOLDINGS, LLC, | : | |
| | : | |
| Defendants. | : | |

## BRIEF OF DEFENDANTS IN SUPPORT OF MOTION TO DISMISS
## COMPLAINT FOR DECLARATORY JUDGMENT

William M. Kelleher (#3961)
Neil R. Lapinski (#3645)
ELLIOTT GREENLEAF
1000 West Street, Suite 1440
Wilmington, DE 19801
Tel: (302) 384-9400, ext. 3
wmk@elliottgreenleaf.com
nrl@elliottgreenleaf.com
*Attorneys for Defendants,*
*Aetna Speciality Pharmacy, LLC*
*and Aetna Health Holdings, LLC*

Of Counsel:

Frederick P. Santarelli
Elizabeth A. Williams
ELLIOTT GREENLEAF & SIEDZIKOWSKI, P.C.
925 Harvest Drive
P.O. Box 3010
Blue Bell, PA 19422
Phone: (215) 977-1000
fps@elliottgreenleaf.com
eaw@elliottgreenleaf.com

## TABLE OF CONTENTS

Page(s)

I.    NATURE AND STATE OF PROCEEDINGS ...................................................... 1

II.   SUMMARY OF ARGUMENT ............................................................................ 1

III.  STATEMENT OF THE FACTS ........................................................................... 2

IV.   ARGUMENT ....................................................................................................... 5

    A.  Standard for Review ................................................................................. 5

        (1)  Standard for Ruling on a Motion to Dismiss for Lack of
             Jurisdiction Pursuant to F.R.Civ.P. 12(b)(1) ........................... 5

        (2)  The Standard for Entertaining Declaratory Relief Under the
             Declaratory Judgment Act ......................................................... 5

    B.  There is No Subject Matter Jurisdiction ................................................. 6

        (1)  No Actual Case or Controversy Exists ...................................... 6

        (2)  Plaintiff's Claims Are Not Ripe, and Are Premature
             and the Complaint Fails to Plead Any Sufficiently Immediate
             Harm or Controversy Warranting Declaratory Relief ........................ 8

    C.  The Court Should Decline Otherwise Entertaining Declaratory Relief, and
        No Such Relief is Recoverable Under the Declaratory Judgment Act, For
        The Matters Presented in the Complaint ......................................................... 11

V.    CONCLUSION ................................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

***Federal Cases***

*Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F.Supp.2d 1265, 1271 (S.D. Cal. 2007)......12

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937) ....................................................7, 8, 9

*Armstrong World Indus. v. Adams*, 961 F.2d 405, 410 (3d Cir.1992)........................................7, 9

*Bell Atlantic Corp. v. MFS Communications Co.*, 901 F.Supp 835 (D. Del. 1995)......................10

*Cutaiar v. Marshall*, 590 F.2d 523, 527 (3d Cir.1979) ..................................................................7

*Declaratory Judgment Act. National Union Fire Ins. Co. of Pittsburgh, Pa. v. Freeport-McMoRan*, 767 F.Supp. 568, 570 (D. Del. 1991)...........................................................................6

*DeGenes v. Murphy*, 2008 WL 450426 at * 2 (W.D. Pa., Feb. 15, 2008)......................................5

*Delpro Co. v. National Mediation Bd. of U. S. A.*, 509 F.Supp. 468, 476 (D. Del., 1981) ...........11

*Hedges v. United States*, 404 F.3d 744, 750 (3rd Cir.2005)..........................................................5

*Japan Gas Lighter Ass'n v. Ronson Corp.*, 257 F.Supp. 219, 237 (D. N.J. 1966) ........................11

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ........................8, 11

*MedImmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764, 776 (2007) ...............................................6, 8

*Pacific Intermountain Express Co. v. Hawaii Plastics Corp.*, 528 F.2d 911 (3rd Cir. 1976).....5, 6

*Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3rd Cir. 1994).................................................................................................7, 9

*Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383 (5th Cir. 2003) ......................................12

*Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1218 n.2 (3rd Cir. 1989)......................7, 12

*Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580-81 (1985) ..............................9, 10

*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985), cert. denied, 474 U.S. 844 (1985)........................................................12

*Western Elec. Corp. v. New York City Transit Authority*, 735 F.Supp. 1205, 1225 -1226 ..........13

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995) ...........................................................6, 11

*Winter v. California Medical Review, Inc.*, 900 F.2d 1322 (9th Cir. 1989) ...................................13

**State Cases**
*Kalisch-Jarcho, Inc. v. City of New York*, 533 N.E.2d 258, 260 (N.Y. Sup Ct. 1988) ................13

**Federal Statutes**
28 U.S.C. § 2201 ....................................................................................................................1, 6, 7

**Federal Rules**
F.R.Civ.P. 12(b)(1)....................................................................................................................2, 5

Defendants, Aetna Specialty Pharmacy, LLC ("ASP") and Aetna Health Holdings, LLC ("Aetna Health")(collectively, "Defendants"), submit this Brief in support of their Motion to Dismiss Complaint for Declaratory Judgment filed by Priority Healthcare Corporation ("Priority").

## I.    NATURE AND STAGE OF PROCEEDINGS

Plaintiff commenced this action on March 13, 2008, seeking to invoke the Court's jurisdiction under the authority of the Declaratory Judgment Act, 28 U.S.C. §2201. The matter is in its earliest stage. Prior to the filing of this Motion to Dismiss the Complaint, there has been no substantive activity.

## II.    SUMMARY OF ARGUMENT

The Court should dismiss Priority's Complaint because there is no actual "case or controversy"; as such, there is no subject matter jurisdiction under Article III, Section 2 of the United States Constitution. A party cannot *create* federal jurisdiction by merely sending letters to or asking questions and making demands of another party to a contract, and alleging it has not received an answer or is not pleased with an answer given. Here, among other things, the Complaint fails to plead a "real" and "substantial" controversy, or one with "sufficient immediacy" and reality to warrant a federal court issuing a declaratory judgment.

All Priority alleges is that the parties are in the midst of discussing their respective views of certain contractual matters between them. Priority does not plead this has resulted in any immediate need for further action by either of them, or that there will be real and immediate consequences to Priority as a result of any alleged uncertainty it professes to have. Such discussions between parties certainly do not rise to the level of an actual "case or controversy" of the kind that is *constitutionally* required to invoke the power of federal courts to issue judgments.

If they were, the federal courts would be deluged with unnecessary litigation under the guise of "declaratory judgment actions" instigated by parties, such as Priority, who seek to merely enhance some negotiating position in the midst of discussions with another party to a contract.

Moreover, the Court should decline to exercise jurisdiction or entertain any relief under the Declaratory Judgment Act ("the Act"), because: (i) the Complaint seeks only advisory opinions about alleged "disputes" that are, at a minimum, not ripe and for which judicial intervention is unnecessary and inappropriate under the Act; (ii) the parties' contract has a dispute resolution clause, which Priority has utterly disregarded and whose process has not been exhausted, which further renders declaratory relief unnecessary and inappropriate under the Act; and (iii) federal courts do not permit parties to misuse the Act as a procedural tool or forum-shopping tactic.

Rather than a genuine desire to redress or avoid immediate and harmful consequences, as explained herein, this Complaint and the nominal "plaintiff" (*i.e.* Priority) are being used by Priority's parent corporation (*i.e.*, Express Scripts, Inc. ("ESI")) to undermine an ongoing litigation against ESI in another District Court, in which ASP and Aetna Health are suing ESI for tort claims in excess of $75 million. *See* Exhibit "1" (12/31/07 Complaint in *Aetna Inc., Aetna Specialty Pharmacy, LLC and Aetna Health Holdings, LLC v. Express Scripts, Inc. and CuraScripts, Inc.*, No. 07-5541 (E.D. Pa.) ("the Philadelphia Federal District Court Litigation"). Where, as here, the Declaratory Judgment Act is being used as forum-shopping vehicle, the Court should exercise its discretion to decline entertaining the matter.

## III.    STATEMENT OF THE FACTS

The Complaint pleads that Priority and Defendants are parties to a written contract, the Drug Supply Agreement. Priority has not identified the contract as an exhibit to the Complaint.

2

The contract contains a confidentiality clause. Therefore, Defendants reserve the right to provide the Court with a copy of the Drug Supply Agreement and a related contract upon securing appropriate protections for their confidentiality. Among other things, the Court will see that the Drug Supply Agreement incorporates a dispute resolution process that Priority has not utilized or exhausted with respect to the "dispute" it claims to exist.

The facts pleaded in the Complaint are as follows. In February 2008, the parties were engaging in certain discussions and exchanging letters, copies of which are attached to the Complaint. *See* Complaint ¶¶15-18 and Exhibits referenced therein. The most that Priority can plead with respect to such letters, is that "Defendants failed to respond to the foregoing letter" (referring to one of Priority's pretextual letters) (*see* Paragraph 19 of the Complaint); and, "the parties met and conferred, but were unable to resolve their differences concerning this issue" (referring to an audit they were discussing) (*see* Paragraph 32 of the Complaint). Significantly, nowhere does the Complaint plead any adverse consequences as a result of these discussions and letters.

Importantly, the timing of Priority's correspondence and its filing of this Complaint coincides with the efforts of Priority's parent company (ESI) to derail an ongoing lawsuit in the federal district court in Philadelphia. ESI is being sued for damages in excess of $75 million in the Philadelphia Federal Court Litigation. *See* Exhibit "1" (12/31/07 Complaint *Aetna Inc., Aetna Specialty Pharmacy, LLC and Aetna Health Holdings, LLC v. Express Scripts, Inc. and CuraScripts, Inc.*, No. 07-5541 (E.D. Pa.)("the Philadelphia Federal Court Litigation"). The same lawyers who are representing *ESI* in that case are counsel for *Priority* in this case. *See* Exhibit "2" (PACER docket printout in the Philadelphia Federal District Court Litigation).

In the Philadelphia Federal Court Litigation, ESI moved to transfer that entire case transferred to this Court. *Id.* (at Docket Item No. 28). In an effort to bolster its attempt to have the Philadelphia federal district court transfer the case to this Court, ESI attached this Complaint to their papers in the Philadelphia federal court. While pointing to the complaint they filed in this case on behalf of Priority, ESI's counsel argued to the District Court in Philadelphia that the Delaware court is "the proper forum to litigate all disputes between the parties [ESI, CuraScripts, Inc., Priority, Aetna Inc., Aetna Health, and ASP]". *See* Exhibit "3" (Defendants' Reply Memorandum In Support of Motion To Transfer Venue, p. 2).[1]

The Philadelphia Federal District Court Litigation is moving expeditiously, with a discovery cut-off date in early October of this year, and a specially listed trial date in March 2009. *See* Exhibit "4" (4/7/08 Order in *Aetna Inc. et al. v. Express Scripts, Inc. et al*). At this time, based on comments of the District Court Judge at a recent rule 16 conference, it appears the District Court in Philadelphia is inclined to retain and move forward with the case in Philadelphia. Presumably, to the extent Priority genuinely believes there is an actual "case or controversy" so immediately in need of adjudication, Priority would have simply filed it in the same District Court in which the other litigation is already pending and being litigated. For whatever reason, despite having no real connection for convenience reasons to the State of Delaware (Priority is an Indiana corporation), Priority sought to have this Court decide the matter. Respectfully, ASP and Aetna health submit priority is engaged in a strategy to delay and obstruct the ongoing Philadelphia Federal Court Litigation. This is an improper use of the Declaratory Judgment Act.

---

[1] Apparently, ESI/Priority have no objection litigating the two cases in a single court, but were dissatisfied with ASP and Aetna Health's choice to file suit in their home district in Philadelphia, where many of their employees and operations are based.

## IV.    ARGUMENT

### A.    Standard for Review

#### (1)    Standard for Ruling on a Motion to Dismiss for Lack of Jurisdiction Pursuant to F.R.Civ.P. 12(b)(1)

When a defendant challenges subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), "'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *DeGenes v. Murphy*, 2008 WL 450426 at * 2 (W.D. Pa., Feb. 15, 2008) (quoting *Mortenson v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3rd Cir. 1977)).

When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of persuasion. *Id.* (citing *Kehr Packages*, 926 F.2d at 1409; *Hedges v. United States*, 404 F.3d 744, 750 (3rd Cir. 2005)).

Furthermore, while a court's review of a motion to dismiss is ordinarily limited to the contents of the complaint, including any attached exhibits, a court may consider some evidence beyond a complaint on a motion to dismiss "including public records ..., documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case." *Id.* (footnote and citations omitted).

#### (2)    The Standard for Entertaining Declaratory Relief Under the Declaratory Judgment Act

When considering a declaratory judgment action, the district courts must first inquire whether there is an actual case or controversy within its jurisdiction. *Pacific Intermountain Express Co. v. Hawaii Plastics Corp.*, 528 F.2d 911, 911 (3rd Cir. 1976). Second, if the court

finds that an actual case or controversy exists, the court must decide whether to exercise its discretion to exercise jurisdiction. *Id.*

The Declaratory Judgment Act does not place a duty on this Court to grant relief to the plaintiff, even if its suit otherwise satisfies subject matter jurisdictional prerequisites. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995). Unlike most actions where a district court has a "virtually unflagging obligation" to exercise jurisdiction, courts possess unique and substantial discretion in determining whether and when to entertain an action under the Declaratory Judgment Act. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Freeport-McMoRan*, 767 F.Supp. 568, 570 (D.Del. 1991)(*comparing Wilton*, 515 U.S. at 282, *with Colorado River*, 424 U.S. at 817); *see also MedImmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764, 776 (2007). (stating that the Court "*may*" declare the rights of any interested party, not that it "*must*" do so) (emphasis in original). Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment. *Wilton*, 515 U.S. at 288.

**B.    There is No Subject Matter Jurisdiction**

**(1)    No Actual Case or Controversy Exists.**

In order for there to be subject matter jurisdiction over a suit for a declaratory judgment, there must be an actual case or controversy. Here, Plaintiff cannot establish an actual controversy. Thus, this Court has no subject matter jurisdiction over Plaintiff's claim and Plaintiff's Complaint must be dismissed.

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides statutory authority for the federal courts to make prospective declarations regarding "the rights and other legal relations of

any interested party seeking such declaration."[2]  The Act is a procedural, not a jurisdictional, statute. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937).  The statute creates a remedy only; it does not create a basis of jurisdiction, and does not authorize the rendering of advisory opinions. *See, e.g., Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1218 n. 2 (3rd Cir. 1989) ("The [Declaratory Judgment] Act is not an independent basis of federal jurisdiction."); *Cutaiar v. Marshall*, 590 F.2d 523, 527 (3rd Cir. 1979) ("The [Declaratory Judgment Act] creates a remedy only; it does not create a basis of jurisdiction...."). For a court to have jurisdiction over a declaratory judgment action, the court must possess the requisite constitutional power and statutory authority. *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1218 n.2 (3d Cir.1989).

Article III, Section 2 of the United States Constitution empowers federal courts to adjudicate only matters that present a "case or controversy." *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir.1994). This "case or controversy" requirement must be satisfied regardless of the kind of relief sought, including declaratory relief. *Armstrong World Indus. v. Adams*, 961 F.2d 405, 410 (3rd Cir. 1992). See also *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 239-40 (1937). ("A federal court's authority to grant declaratory relief ... extends to the article III limits on the court's power to adjudicate disputes.")

The controversy must be definite and concrete, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts. *Aetna Life Ins. Co. v. Haworth*, 300 U.S.

---

[2] 28 U.S.C. § 2201(a) states: "In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

227, 240-41 (1937). Thus the Supreme Court has held that there must be a "live dispute" between the parties. *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). The difference between an abstract issue and a "live dispute" or "controversy" contemplated by the Declaratory Judgment Act is one of degree. *Id.* The question in each lawsuit reduces to "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id; see also MedImmune, Inc. v. Genentech*, Inc., 127 S.Ct. 764, 771 (2007).

The dispute underlying Plaintiff's request for relief is, put simply, not a dispute. All Plaintiff alleges in its Complaint is that the parties are in the midst of discussing their respective views of certain contractual matters between them and exchanging letters. *See* Complaint ¶¶15-22, 24-25, 28-31. Plaintiff's Complaint merely suggests disagreement between the parties. *Id.* Moreover, the Complaint not only fails to plead any adverse consequences as a result of the parties' on-going discussions relating to its contractual obligations, but also fails to indicate any facts demonstrating any immediate need for declaratory relief.

The dispute underlying Plaintiff's request for declaratory relief is too vague to satisfy the United States Constitution's Article III "case or controversy" requirement at this stage. Plaintiff has failed to adequately define the nature and extent of this alleged controversy to support federal subject matter jurisdiction. As a result, this Court should dismiss Plaintiff's Complaint for lack of subject matter jurisdiction.

> **(2)    Plaintiff's Claims Are Not Ripe and Are Premature, and The Complaint Fails to Plead Any Sufficiently Immediate Harm or Controversy Warranting Declaratory Relief.**

In order for there to be subject matter jurisdiction over a suit for a declaratory judgment, the controversy must be ripe. Here, Plaintiffs cannot establish an actual controversy because Plaintiff's claim is not ripe. Thus, this Court has no subject matter jurisdiction over Plaintiff's claim and Plaintiff's Complaint must be dismissed.

In a declaratory judgment action, the power of the federal courts to entertain disputes vis-a-vis the proscription against the issuance of advisory opinions implicates several justiciability doctrines, one of which is ripeness. Concerns over ripeness prevent courts from prematurely adjudicating abstract disagreements; ripeness is in essence, a question of timing. *Presbytery of New Jersey*, 40 F.3d at 1462. Where ripeness questions have been raised, the party seeking the declaratory judgment carries the burden of demonstrating that the case is justiciable. *Aetna Life Ins. Co.*, 300 U.S. at 240-41.

At the heart of the ripeness doctrine is the consideration that courts should not adjudicate "contingent future events that may or may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580-81 (1985). Under Third Circuit precedent, the ripeness of a declaratory judgment action hinges upon three analytical prongs: (1) "the adversity of the interest of the parties, (2) the conclusiveness of the judicial judgment, and (3) the practical help, or utility, of that judgment." *Armstrong World Indus. v. Adams*, 961 F.2d 405, 411 (3rd Cir. 1992); *see also Presbytery of New Jersey*, 40 F.3rd at 1463.

First, Plaintiff's Complaint fails to adequately allege any adversity of interest. In determining whether there is adversity of interest for the purposes of a ripeness analysis, the Supreme Court has urged the courts to pay "particular attention to the likelihood that the harm alleged by plaintiffs will ever come to pass." *Thomas v. Union Carbide Agricultural Products*

9

*Co.*, 473 U.S. 568, 580-81 (1985) (finding a case not ripe when it involved "contingent future events that may not occur as anticipated, or indeed may not occur at all").

As discussed *supra*, not only has the Plaintiff failed to allege any adverse consequences as a result of the parties' on-going discussions relating to its contractual obligations, but Plaintiff also fails to allege even the mere possibility that any harm to its interests will ever occur. Plaintiff has merely alleged that it has exchanged letters relating to the interpretation of obligations and duties under the parties' contract, and that the parties have been "unable to resolve their differences." *See* Complaint ¶32. Thus, Plaintiff has failed to demonstrate any adversity of interest between the parties – either current, imminent or prospective - because it has not pled that there will any adverse consequences as a result of the alleged uncertainty it professes to have with regards to its contractual obligations.

Plaintiff also fails to adequately allege any utility in seeking a declaratory judgment at this stage. The utility requirement of the ripeness analysis is concerned with the "hardship" to the parties that would result from the Court's refusal to consider granting relief. Whether a case is ripe, depends upon whether a declaratory plaintiff can demonstrate substantial hardship to denying pre-enforcement review when the plaintiff is forced to choose between foregoing possibly lawful activity and risking substantial sanctions. *Bell Atlantic Corp. v. MFS Communications Co.*, 901 F.Supp 835 (D. Del 1995).

Here, Plaintiff has not pled that it must forego any lawful activity or undertake the risk of any sanctions relating to the exercise of its interests under the contract. Plaintiff has further failed to plead hardship relating to any alleged uncertainty it professes to have regarding the contract.

**C.    The Court Should Decline Otherwise Entertaining Declaratory Relief, and No Such Relief is Recoverable Under the Declaratory Judgment Act, For The Matters Presented in the Complaint.**

Even if Plaintiff's pleading is sufficient to satisfy federal jurisdiction, the Court should use its discretionary power to dismiss the declaratory relief claim as an abuse of the Declaratory Judgment Act.

In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration. *Wilton*, 515 U.S. at 288. The Declaratory Judgment Act was designed to relieve potential defendants from the "Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure - or never." *Japan Gas Lighter Ass'n v. Ronson Corp.*, 257 F.Supp. 219, 237 (D. N.J. 1966). Thus, the Act permits a plaintiff to forestall the accrual of potential damages by suing for a declaratory judgment, *once the adverse positions have crystallized and the conflict of interests is real and immediate. Id. (citing Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

In exercising its reasoned discretion, the two most important criteria to be weighed by the Court are whether declaratory relief would clarify and settle the legal relations in issue, and whether it would afford relief from the uncertainty and controversy giving rise to the controversy. *Delpro Co. v. National Mediation Bd. of U. S. A.*, 509 F.Supp. 468, 476 (D. Del., 1981) (*citing Samuel Goldwyn, Inc. v. United Artists Corp.*, 113 F.2d 703, 709 (3rd Cir. 1940) and *Stamicarbon, N.V. v. Chemical Construction Corp.*, 355 F.Supp. 228, 231-32 (D. Del. 1973)).

District courts may also consider equitable, prudential, and policy arguments when deciding whether to dismiss a claim for declaratory judgment. Such non-exclusive factors

include, (1) whether the declaratory remedy is being used merely for purposes of "procedural fencing" or to provide an arena for race to *res judicata*; (2) the availability of a better or more effective alternative remedy; (3) whether plaintiff is engaged in forum shopping; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; and (5) the availability and convenience of other remedies. *Terra Nova Insurance Co. v. 900 Bar, Inc.,* 887 F.2d 1213, 1224 (3rd Cir. 1989); *see also Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383 (5th Cir. 2003).

Plaintiff filed this action the same day the parties allegedly "met and conferred" but were "not able to resolve their differences." Upon filing the complaint in such precipitous fashion, Plaintiff immediately sought to use it as an exhibit for arguing that the Philadelphia Federal Court Litigation should be transferred to this Court. That forum-shopping strategy is not a proper use of the Declaratory Judgment Act.

Principles of comity and efficient judicial administration dictate that when two actions are pending in different federal district courts, and those actions involve related parties and issues, one of the two actions should be dismissed or transferred. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985), *cert. denied*, 474 U.S. 844 (1985) (holding district court abused its discretion in issuing declaratory relief and preliminary injunction against union's work stoppage, in light of previously filed action in New York district court involving same issue in broader context); *see also Veoh Networks, Inc. v. UMG Recordings, Inc.* 522 F.Supp.2d 1265, 1271 (S.D. Cal. 2007) (granting motion to dismiss or transfer based on suspicion that plaintiff's main purpose in filing the declaratory judgment motion was tactical, or to anticipate an affirmative defense better raised in pending litigation between the same parties in neighboring district court). Here, Plaintiff is clearly attempting to

use the Declaratory Judgment Act as a means for derailing the ongoing case in the Philadelphia federal district court.

Moreover, Plaintiff's instant Complaint appears designed to circumvent the contract's provisions for dispute resolution. Plaintiff has initiated none of the contractually available steps designed to alleviate or solve the sort of dispute at issue here.[3] Parties to an agreement may not seek a declaration of their contract rights when their agreement specifies a different, reasonable means for resolving such disputes. *Western Elec. Corp. v. New York City Transit Authority*, 735 F.Supp. 1205, 1225 -26 (S.D.N.Y. 1990) (applying New York law and citing *Kalisch-Jarcho, Inc. v. City of New York*, 533 N.E.2d 258, 260 (N.Y. Sup. Ct. 1988). Courts have also dismissed actions for declaratory injunctions where the party failed to exhaust its administrative remedies prior to seeking judicial relief. *Winter v. California Medical Review, Inc.*, 900 F.2d 1322 (9th Cir. 1989) (physician required to exhaust administrative remedies before bringing an action for injunctive and declaratory relief).

This contract contains its own prophylactic rules of construction. Thus, this is yet another basis for this Court to exercise its discretion to decline entertaining Priority's request for declaratory relief. The Court should dismiss this action.

## V.    CONCLUSION

Based on the foregoing, the Court should dismiss the Complaint because the Court lacks subject matter jurisdiction, as there is no actual "case or controversy" required by the Article III, Section 2 of United States Constitution. Further, the Court should decline to exercise jurisdiction or otherwise entertain relief under the Declaratory Judgment Act, because (i) the Complaint

---

[3] Upon securing appropriate protections for confidentiality of the relevant agreements, Defendants will provide the Court with the contracts and the specific clauses setting forth the detailed dispute resolution process.

seeks advisory opinions about alleged "disputes" that are not ripe and for which judicial intervention is unnecessary; (ii) the parties' contract has a dispute resolution clause, which Priority has utterly disregarded and whose process has not been exhausted; and (iii) this action and the nominal "plaintiff" (*i.e.* Priority) are being used by Priority's parent corporation (*i.e.*, ESI) as a procedural tool to undermine ongoing litigation in another District Court involving ESI, ASP and Aetna Health.

Respectfully submitted,

ELLIOTT GREENLEAF

/s/ *William M. Kelleher*

Date: April 14, 2008
William M. Kelleher (#3961)
Neil R. Lapinski (#3645)
1000 West Street
Suite 1440
Wilmington, DE 19801
Tel: (302) 384-9400, ext. 3
wmk@elliottgreenleaf.com
nrl@elliottgreenleaf.com
*Attorneys for Defendants,*
*Aetna Speciality Pharmacy, LLC*
*And Aetna Health Holdings, LLC*

EXHIBIT "1"

**From:**     ecf_paed@paed.uscourts.gov
**Sent:**     Thursday, January 10, 2008 11:42 AM
**To:**       paedmail@paed.uscourts.gov
**Subject:**  Activity in Case 2:07-cv-05541-BWK AETNA INC. et al v. EXPRESS SCRIPTS, INC. et al Complaint

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

**United States District Court**

**Eastern District of Pennsylvania**

**Notice of Electronic Filing**

The following transaction was entered on 1/10/2008 at 11:42 AM EST and filed on 12/31/2007
**Case Name:**      AETNA INC. et al v. EXPRESS SCRIPTS, INC. et al
**Case Number:**    2:07-cv-5541
**Filer:**          AETNA INC.
                    AETNA SPECIALTY PHARMACY, LLC
                    AETNA HEALTH HOLDINGS, LLC
**Document Number:** 1

**Docket Text:**
**COMPLAINT against EXPRESS SCRIPTS, INC., CURASCRIPTS, INC filed by AETNA INC., AETNA SPECIALTY PHARMACY, LLC, AETNA HEALTH HOLDINGS, LLC. Filing fee $ 350 receipt number 944754. JURY TRIAL DEMAND. (rf, )**

**2:07-cv-5541 Notice has been electronically mailed to:**

JAMES C. CRUMLISH, III jcc@elliottgreenleaf.com, edpaservice@elliottgreenleaf.com, jmc@elliottgreenleaf.com

**2:07-cv-5541 Notice will not be electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1001600548 [Date=1/10/2008] [FileNumber=3316388-0
] [47755c4618fecd8a0c8a06b432579977373280cb07cf1c622c9e9d2d659734266ef
14c51536135facd5dd8557b9bce09809646015e692ea6528f38818747b866]]

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AETNA INC.**<br>**980 Jolly Road**<br>**Blue Bell Pa 19422** | : | |
| | : | |
| **AETNA SPECIALTY PHARMACY, LLC.**<br>**980 Jolly Road**<br>**Blue Bell, PA 19422** | : | **CIVIL ACTION NO.** |
| | : | |
| **AETNA HEALTH HOLDINGS, LLC**<br>**151 Farmington Ave.**<br>**Hartford, CT 06156** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **EXPRESS SCRIPTS, INC.**<br>**One Express Way**<br>**St. Louis, MO 63121** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **CURASCRIPT, INC.**<br>**6272 Lee Vista Boulevard**<br>**Orlando, FL 32822** | : | |
| | : | |
| **Defendants.** | : | |

## CIVIL ACTION COMPLAINT

This action is brought by Plaintiff, Aetna Specialty Pharmacy, Inc. ("ASP"), Aetna

Health Holdings, LLC ("Aetna Health"), and Aetna Inc. ("Aetna")(collectively "Plaintiffs"). By

this action, Plaintiffs seek damages, injunctive relief and to recoup overpayments made for

pharmaceutical products as a result of Express Scripts, Inc.'s ("Express Scripts") and CuraScript,

Inc.'s ("CuraScript")(collectively "Defendants") tortious interference with Plaintiffs' agreements

with Priority Healthcare Corporation ("Priority"), including but not limited to recouping the

$75,000,000.00 paid to Defendant Express Scripts that Express Scripts retains, despite depriving Plaintiffs of the benefit of their bargains.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the claims asserted herein pursuant to diversity jurisdiction, 28 U.S.C. § 1332, and supplemental jurisdiction, 28 U.S.C. § 1367.

2.      This Court also has original jurisdiction over Plaintiffs claims under 35 U.S.C. § 292 *et seq.*

3.      Venue in this Court is proper as health benefits plans involved in this action are administered in whole or in part in this District.  Venue in this Court is also proper as Aetna's principal place of business is in this District.  Venue is also proper in this District as the unlawful conduct described herein was directed toward Aetna and its facilities in this District.  Further, Express Scripts regularly conducts business in this District including but not limited to the negotiation of agreements and the sale and distribution of pharmaceutical products related to the instant dispute.

## THE PARTIES

4.      Aetna is a Pennsylvania corporation headquartered in Connecticut and with its principal place of businesses 980 Jolly Road, Blue Bell, Pennsylvania.

5.      ASP is a Delaware Corporation, headquartered in Blue Bell, Pennsylvania, and is a wholly owned subsidiary of Aetna.

6.      Aetna Health is a Delaware limited liability company with a principal place of business in Connecticut.  Aetna Health is also a wholly owned subsidiary of Aetna.

2

7.    Aetna is one of the nation's leading diversified health care benefits companies, serving approximately 36.6 million people with information and resources to help them make better informed decisions about their health care.

8.    In 2004, for example, Aetna spent more than $1 billion annually on specialty pharmaceuticals, an area with a national growth rate in excess of 20 percent.

9.    ASP serves customers including Aetna members with chronic conditions who suffer from diseases such as cancer, Crohn's Disease, cystic fibrosis, Gaucher's Disease, hemophilia, hepatitis, HIV/AIDS, Multiple Sclerosis, pulmonary hypertension, renal failure, respiratory syncytial virus (RSV), rheumatoid arthritis, organ transplants and anemia. Medications for these diseases are expensive, and administration of those medications requires intensive coordination.

10.    Defendant, Express Scripts is a Missouri Corporation, and is, as touted in its 2006 annual report, "one of the largest full-service pharmacy benefit management ("PBM") companies."

11.    Defendant CuraScript, a Delaware Corporation with its principal place of business at 6276 Lee Vista Blvd., Orlando, FL, 32822, is a wholly owned subsidiary of Defendant Express Scripts.

12.    Defendants Express Scripts and CuraScript, were at all relevant times, direct competitors of ASP.

13.    Express Scripts, as one of the largest PBM companies, provides PBM services to over 50 million members and generates over $18 billon a year in revenue.

14.    According to the "Corporate Profile" on its web site, "Express Scripts harnesses market forces to make prescription drugs more affordable. The Company develops formularies,

3

negotiates discounts from retail pharmacies and drug manufacturers, encourages the use of lower-cost brand and generic drugs and consults with clients on benefit design. Express Scripts serves thousands of client groups including managed care organizations, health insurers, employer groups, third party administrators and government-sponsored plans."

15.    In conducting its business, Express Scripts requires compliance with a Code of Ethics, which mandates "honest and ethical" conduct, including "[p]roactively promot[ing] ethical and honest behavior within Express Scripts and its subsidiaries and affiliates."

16.    Defendants Express Scripts and CuraScript violated the law and their own Code of Ethics by, *inter alia,* tortiously interfering with and conspiring to interfere with ASP's Joint Venture Agreement and Drug Supply Agreement with Priority to deprive ASP of the material benefits of those Agreements to ASP's and Aetna's members' detriment.    As  a result of Defendants' improper and unprivileged conduct, Priority breached its fiduciary duties to Plaintiffs.

17.    Defendants' tortious misconduct and interference with Plaintiffs' legally protected interests is ongoing.

## BACKGROUND FACTS

### A.    ASP, Aetna, Aetna Health And Priority Enter into the LLC and Drug Supply Agreements.

18.    On August 1, 2004, ASP, Aetna, Aetna Health and Priority entered into a Limited Liability Company Agreement ("LLC Agreement") and a series of ancillary agreements including a Drug Supply Agreement ("DSA")(collectively the "Agreements") creating a joint venture for the purpose of establishing, building, owning and operating a stand alone integrated specialty pharmacy business and included Clinical Programs.

4

19.    The joint venture between Priority and ASP was intended to conduct business as a Limited Liability Corporation known as ASP and was to be focused on building and operating "best in class" specialty pharmacy services including leveraged buying power to reduce health care costs and deliver comprehensive clinical program management for ASP customers.

20.    At the time of the LLC and DSA Agreements, Priority was a publicly traded company and operated as a pharmacy and distributor of specialty pharmaceutical products and services.

21.    Priority was, at the time of the Agreements with Plaintiffs, in the business of providing biopharmaceuticals, complex therapies, related disease treatment programs and other service offerings for patients, payors, physicians and pharmaceutical manufacturers.

22.    The specialty areas serviced by Priority included oncology, gastroenterology, reproductive endocrinology, neurology, hematology, pulmonology, ophthalmology, rhuematology, endocrinology, infectious disease and nephrology, as well as ambulatory surgery centers.

23.    As a measure of its volume of business, Priority at the time of the Agreements sold over 5,000 Stock Keeping Units ("SKUs") of specialty pharmaceuticals and medical supplies to outpatient renal care centers and office-based physicians in oncology and other physician specialty markets.

24.    Priority also, as a part of its specialty pharmacy business, provided for the shipping of refrigerated pharmaceuticals overnight in special packaging and offered automated order entry services and customized distribution for group accounts.

25.    At the time of the Agreements, Priority itself serviced over 7,000 customers in all 50 states, including office-based oncologists, renal dialysis clinics, ambulatory surgery centers and primary care physicians.

26.    At the time of the Agreements, Priority also filled individual patient prescriptions, primarily for self-administered biopharmaceuticals. These patient-specific prescriptions were filled at 32 licensed pharmacies in 17 states and are primarily shipped directly to the patient overnight in specialized packages.

27.    Priority at the time of the Agreements also provided disease treatment programs for hepatitis C, cancer, infertility, hemophilia, human growth hormone deficiency, rheumatoid arthritis, Crohn's disease, pulmonary hypertension, pain management, multiple sclerosis, sinusitis, age-related macular degeneration, idiopathic pulmonary fibrosis, immune deficiencies, psoriasis, cystic fibrosis and others.

28.    Priority was at the time also a provider of reimbursement systems and product support to pharmaceutical manufacturers, biotechnology companies and medical device companies.

29.    All of the above services, market positions and existing and prospective contractual relationships with third party suppliers and manufacturers and the resulting economies of scale, increased purchasing power and good will that were central to Priority's fully and faithfully performing its contractual obligations, duties and obligations to ASP pursuant to the LLC and DSA Agreements, including its post option exercise duties.

30.    Indeed, Priority intended to exploit its anticipated increased purchasing volume resulting from the joint venture not only to provide significantly better if not preferential pricing for ASP, but for itself as well.

6

31.    Priority also anticipated that the joint venture would allow it to capitalize on and expand its "high value" purchasing relationships with pharmaceutical manufacturers and suppliers.

32.    Significantly, the LLC Agreement contemplated that the parties would simultaneously execute the DSA, which they did. LLC agreement, Section E.[1]

33.    Among the material rights bargained for and agreed upon by the parties was an option whereby Plaintiffs could purchase Priority's membership interest in the ASP for $75,000,000.00 (seventy five million dollars). LLC Agreement, Section 6.3(a).

34.    Further, central to the covenants, representations and warranties of the LLC Agreement and the DSA was Priority's established and future market position, long range plan, experience and ability to successfully negotiate "best prices", beneficial rates, terms and conditions with third party suppliers and manufacturers in terms that were most favorable to ASP including, as it was expressed in the LLC Agreement, for a substantial period after the Purchase Option under the LLC Agreement was exercised by Plaintiffs.

35.    Under the LLC Agreement, a purchase option provision of the LLC Agreement could be triggered by a change of control of Priority. LLC Agreement Sections 6.3 (a) (ii), 6.4.

---

[1] The LLC Agreement contains a Confidentiality Provision that is incorporated into the DSA. As a reasonable step to preserve the confidentiality of proprietary information, including the terms of the Agreements, Plaintiffs only generally reference the provisions of those Agreements to provide Defendants notice of the terms and conditions that they caused Priority to breach as required under the Federal Rules of Civil Procedure. Simultaneously with the filing of the instant complaint, Plaintiffs are filing a Motion for Leave to File Agreements Under Seal. LLC Agreement Section 11.10.

7

**B.    Defendants Interfere With Priority's Material Obligations To Plantiffs.**

36.    The DSA and LLC Agreement, by incorporation, *inter alia*, explicitly require Priority to use in good faith reasonable commercial efforts to identify for ASP means for securing better, i.e. " best prices", terms for the purchase of certain pharmaceuticals. DSA Agreement Sections 2.2, 2.13.

37.    Pursuant to the DSA, Priority is obligated to supply all of ASP's requirements of specialty pharmaceuticals. DSA Agreement Section 2.1 (ii).

38.    Further, Priority is obliged to directly supply Specialty Pharmaceuticals to ASP whenever "it is not practicable to utilize a third party supplier...or when it is more cost effective to ASP". DSA Agreement Section 2.1 (ii).

39.    The DSA, *inter alia*, also requires Priority to provide ASP with its best pricing, as defined under the DSA, for certain pharmaceutical products plus a small specified service fee and, in certain cases, other specified fees and charges. DSA Agreement Section 3.1, 3.2.

40.    Priority also has express obligations under the LLC Agreement and DSA to fully account for and credit to ASP and to administer, pursue and collect all rebates and discounts, returns, credits and other similar adjustments, including any funds or credits from manufacturers and other incentives. DSA Agreement Section 2.8.

41.    Priority also has a duty under the DSA to supply ASP with copies of all of its supply contracts with third party vendors. DSA Agreement Section 2.2.

42.    Further, the "best pricing" covenants contained in the LLC and DSA contemplated that ASP was to receive from Priority, or any of its affiliates, the full benefit from any third party suppliers, including any rebate, discount, return, credit and/or incentives, regardless of when or how paid or credited. DSA Agreement Section 2.8.

8

43.    Also, the Agreements require Priority to accurately maintain all books and records that would allow ASP to confirm that it was actually receiving Priority's best pricing. DSA Agreement Sections 3.4, 4.1.

44.    Under the DSA and the LLC Agreement, Priority was to fully and accurately account for and pay, credit or otherwise provide adjustments to ASP for all rebates, discounts, credits, returns and incentives within 30 days of receipt of any discount, rebate or incentive by Priority.  DSA Agreement Section 3.4.

45.    Under the DSA, Priority is, on an ongoing basis, to provide ASP with full and accurate written reports of Priority's providing its "best prices" to ASP. DSA Agreement Section 3.4.

46.    Further under the DSA, ASP is also entitled to request and receive candid analytic reports, as ASP may request, or documentation of Priority's actual net acquisition costs of specialty pharmaceuticals. DSA Agreement Section 3.4.

47.    The DSA also expressly provides that all records created by Priority for ASP's operations, including pharmacy records, belong to ASP. DSA Agreement Section 4.2.

48.    The DSA also explicitly allows ASP to audit Priority's books and records to determine if ASP was receiving Priority's best prices as required under the DSA. DSA Agreement Section 4.1.

49.    By their express terms, the DSA and LLC Agreement were intended to provide transparency that would allow ASP to determine if it was actually receiving Priority's best prices.

9

50.    Further, the DSA also required Priority to provide ASP with an uninterrupted supply of all specialty pharmaceuticals required by ASP even after the exercise of Aetna Health's "buy out" option under the LLC Agreement.

51.    The DSA also mandated that Priority would, subsequent to the exercise of the LLC Agreement "Buy Out" option, continue to provide certain pharmaceuticals at Priority's best prices and that Priority would also assist ASP to transition Priority's direct supply agreements with pharmaceutical manufacturers and wholesalers, including, *inter alia*, by providing ASP with pharmaceutical vendor and supplier contracts, by providing ASP with lists of key contacts at certain pharmaceutical vendors and suppliers and setting up meetings with such vendors and suppliers. DSA Agreement Sections 3.1, 7.24.

### C.    Express Scripts Purchases Priority, triggering Aetna Health's Purchase Option.

52.    On October 14, 2005, approximately fourteen months after the execution of the LLC Agreement and the DSA, Defendant Express Scripts acquired the capital stock of Priority in a cash transaction for $28 per share, or approximately $ 1.3 billion. The acquisition was accomplished through the merger of wholly-owned subsidiary CuraScript with and into Priority.

53.    Priority, headquartered in Lake Marie, Florida, was at the time, among the nation's largest Specialty and distribution companies, with approximately $1.7 billion in annual revenue during 2004 and approximately $1.1 billion in revenue for the six months ended July 2, 2005.

54.    The $1.3 billion purchase price of Priority by Express Scripts and merger into CuraScript was financed with approximately $167 million cash on hand and the remainder

10

adding $1.6 billion in Term A loans through a new credit facility. *See* Express Script's 2005 Annual Report at pp. 68-69.

55.    Previously, on January 30, 2004, approximately five months after Priority entered into the Agreements with Plaintiffs, Defendant Express Scripts bought CuraScript further enhancing its market power and advancing Express Scripts intention to dominate the Specialty Pharmacy Market.

56.    Express Scripts' 2005 Annual Report further notes that "[o]n January 30, 2004, we acquired the outstanding capital stock of CuraScript, for approximately $334.4 million . . . . CuraScript is one of the nation's largest Specialty services companies and has enhanced our ability to provide comprehensive pharmaceutical management services to our clients and their members." *Id.* at p.69.

57.    As a result of its acquisition of CuraScript, Express Scripts reported that in 2005 its specialty pharmacy revenues had increased 330%.
http://www.lexdon.com/article/Express_Sripts_ Reports_Record Fourth/35393.html.

58.    On July 22, 2005, barely a year after Express Scripts acquired CuraScript, Express Scripts' CEO, George Paz, announced that Defendant Express Scripts had grown CuraScript's revenues from $300 hundred million to over one billion dollars per year. *Priority Healthcare Corp (form DEFA 14 A) (Express Scripts, Inc. merger and acquisition announcement).*

59.    CuraScript's web site boasts that, "[i]n October 2005, Express Scripts completed the acquisition of Priority Healthcare Corporation to create one of the largest specialty pharmaceutical dispensing and distribution company [sic] in the United States. Priority Healthcare was the recognized industry leader in specialty dispensing and distribution for

multiple markets. Due to the capabilities and increased resources of the two entities, CuraScript is strategically positioned to create customized programs, staffed with dedicated experts, that will grow our pharmaceutical manufacturer's business while remaining 100% committed to exceptional patient care." *See* http://www.curascript.com/content/home_history.htm.

60.     Before Express Scripts purchased Priority for $1.3 billion, Express Scripts, as a publicly traded company, conducted a thorough due diligence of Priority's operations and Priority's contractual obligations, including but not limited to Priority's obligations and commitments to ASP, Aetna and Aetna Health under the LLC Agreement and the DSA.

61.     Indeed, the President and CEO of CuraScript, Dominick Meffe, admitted in a published report in the St. Louis Business Journal that the analysis of the acquisition of Priority by Express Scripts began in the summer of 2004, and that "it took an unbelievable amount of study." St. Louis Business Journal, "The deal: Express Scripts Inc. purchases Priority Healthcare Corp", Friday December 16, 2005.

62.     During Express Scripts' negotiations and "study" with Priority, it is apparent that Express Scripts and its consultants, agents, officers and attorneys became aware of the legal and moral obligations and duties owed by Priority to Plaintiffs under the Agreements, and undertook a course of intentional conduct to conspire and otherwise effect a scheme to interfere with Plaintiffs' legitimate business interests.

63.     Express Scripts, as a sophisticated, publicly traded company, knew that in merging and purchasing the assets of Priority, it was also purchasing Priority's express contractual obligations and duties to ASP, Aetna and Aetna Health, including, *inter alia*, Priority's ongoing Best Pricing guarantees and ASP's ownership of support documents and

rights to audit Priority's books and records, including information relating to supplier and third party manufacturer's pricing and contracts.

64.    Express Scripts also knew that Priority's obligations to continue to provide ASP with its best pricing, to assist in good faith the transition of all of Priority's direct supply agreements with pharmaceutical wholesalers, to provide ASP with copies of all Specialty Pharmaceutical vendor and supplier contracts, to provide ASP with a list of contacts at such vendors and suppliers and to assist ASP in setting up meetings with those vendors and suppliers would survive the Agreements.

65.    It is believed, even before the purchase of Priority was announced, that Defendants Express Scripts and CuraScript intended to deprive ASP, Aetna and Aetna Health of the benefits of the LLC Agreement and the DSA and to, therefore, injure or destroy ASP's efforts to establish a successful "best of class" stand-alone, independent Specialty Pharmaceutical Business by depriving it of its best pricing guarantees and the benefit of Priority's supplier and vendor contacts.

66.    Further, by interfering with and causing the denial of the material benefits of the Agreement with Priority and the benefits of the DSA and LLC Agreements, Defendants have gained an unfair competitive advantage which includes the *de facto* preclusion of Plaintiffs from prospective advantageous relationships and markets.

67.    It is believed that Defendants intended, *inter alia*, to disadvantage, induce, direct or otherwise interfere with Plaintiffs' rights and interests and cause Priority to dishonor its legal obligations under the LLC Agreement and DSA to ASP in the highly competitive specialty pharmaceutical market to gain an unfair competitive advantage over ASP for its newly acquired subsidiary CuraScript.

13

68.    On October 14, 2005, Express Scripts announced that it had completed the merger and acquisition of Priority. Specifically, Express Scripts noted that, "[t]he combined Priority and CuraScript will be one of the nation's largest specialty pharmacy and distribution companies, with over $3 billion in annual revenues. Specialty pharmaceuticals are the fastest growing component of prescription drug spend [sic] and the combined company will provide a single source solution for comprehensive biopharmaceutical services." http://phx.corporate-ir.net/phoenix.zhtml?c=69641&p=irol-newsArticle&ID=767928&highlight=.

69.    On October 25, 2005, Plaintiffs, pursuant to the Purchase Option in the LLC Agreement, gave Priority notice that it intended to exercise its Purchase Option and that the closing of Aetna Health's Purchase of Priority's Membership interest in the LLC Agreement would take place on December 30, 2005. LLC Agreement 6.3 (a).

70.    Plaintiffs' notice of the exercise of their Purchase Option was directed to Dom Meffe, who at the time was a Senior Vice President and CEO of CuraScript.

71.    On October 25, 2005, in response to Plaintiffs' Notice of Purchase Option Exercise, David Lowenberg, Chief Operating Officer ("COO") of Express Scripts, indicated that he would be responsible for negotiating terms relating to the ASP Purchase Option.

72.    Mr. Lowenberg was a highly compensated executive of Express Scripts and ultimately took the position of CEO of CuraScript.

73.    During the next several months, the parties continued to effect the transition contemplated under the terms of the Agreements.

74.    On December 28, 2005, Eric Elliott, on behalf of ASP wrote an e-mail to Mr. Lowenberg regarding the completion of the "buyout" transition and again reiterated and confirmed that all of the terms and obligations under Agreements remained unaltered and that

14

Priority had continuing obligations to ASP under the Agreements, including but not limited to its duties and obligations under the DSA.

75.    In that e-mail to Defendant Express Scripts' COO Lowenberg, Plaintiffs reasonably sought assurances and confirmation that Priority would, as a part of its post "buy out" obligations to ASP, continue to supply ASP with the critical drugs that were distributed with Priority.

76.    Mr. Elliott's confirming e-mail stated that, "[a]lthough we have received numerous assurances on this point from various levels at Priority, given the importance of that drug supply agreement to [ASP] and Aetna's members, I would like to have this confirmed by you as well."

77.    Both Mr. Elliott's e-mail and the attached letter further confirmed that Aetna was insisting on Priority's compliance with the terms of the Agreements and reserving "all of its rights under the ASP joint venture agreements, including the Build and Service Agreement, the Contribution Agreement, **the Drug Supply Agreement** and the Back-Up Provider Agreement, which **by their terms will continue in effect after the closing**." (emphasis added).

78.    Mr. Lowenberg never advised Plaintiffs, during this transition period, that Defendants Express Scripts and CuraScript were interfering with, directing or planning to cause Priority to dishonor the material obligations due Plaintiffs under the LLC Agreement and DSA.

79.    On December 30, 2005, Aetna Health wired, at the direction of Express Scripts, $75 Million into Express Scripts' bank as payment for the "buy out" option under the terms of the LLC Agreement.

15

**D.    Express Scripts Takes the $75,000,000.00 and Deprives Plaintiffs of Their Contractual Benefits.**

80.    Subsequent to the closing and transmittal of the $75 Million, Express Scripts and CuraScript continued to act and induced Plaintiffs to believe that they intended to ensure Priority's compliance with all the material terms of the Agreements.

81.    On August 8, 2006, subsequent to the exercise and closing of Aetna Health's Purchase Option, as contemplated in Mr. Elliott's December 28, 2005 e-mail to Mr. Lowenberg, Aetna Health representatives again conferred with Mr. Lowenberg to discuss outstanding transition issues relating to ASP and its ongoing operation, including but not limited to Priority's continuing and enforceable obligations under the DSA.

82.    Subsequent to the closing of the Purchase Option, Plaintiffs continued to request continuing confirmation of Priority's full compliance with its duties and obligations to ASP under the LLC Agreement and the DSA.

83.    Indeed on August 8, 2006 a conference call was conducted by executives of Plaintiffs with CEO of CuraScripts, David Lowenberg, and Plaintiffs properly continued to insist that Priority honor all its material obligations under the LLC Agreement and the DSA.

84.    Further Plaintiffs specifically confirmed to Mr. Lowenberg, as he knew, that Priority had absolute and continuing obligations to provide best prices to ASP under the Agreements and to continue to provide documentary proofs that Priority was complying with those obligations.

85.    Plaintiffs further advised Mr. Lowenberg that, should Priority fail to honor its legal and contractual commitments to Plaintiffs, Plaintiffs would suffer damages in the range of millions of dollars and that Plaintiffs would lose substantial business opportunities and access to

16

critical markets in the specialty pharmacy business, which were to be provided by Priority under the Agreements.

86.     During this telephone conference, Mr. Lowenberg, for the first time, represented that Priority would not honor its continuing obligations under the LLC Agreement and the DSA.

87.     Mr. Lowenberg was informed that Priority's failure to honor the terms of the LLC Agremeent and the DSA was a breach of the parties' Agreements and that Aetna Health would demand Priority's full compliance with Agreements as well as full compensation for Priority's breach of those Agreements.

88.     Mr. Lowenberg, who was aware of Priority's contractual and fiduciary duties and knew that he, CuraScript and Express Scripts never intended to allow Priority to perform those legal duties to Plaintiffs or allow Plaintiffs to receive the full benefit of their bargain with Priority, cynically replied, in substance, **"we will never write that check."**

89.     As noted above, Express Scripts and CuraScript have generously rewarded Mr. Lowenberg for his role in their business ventures, including but not limited to his direction of Express Scripts' plan to interfere with Aetna's, ASP's and Aetna Health's rights under the LLC Agreement and the DSA.

90.     It is apparent that Defendants never intended to allow Priority to comply with its explicit legal obligations to ASP to use in good faith, reasonable commercial efforts to provide and continue to identify means for securing better pricing terms for the purchase of certain pharmaceuticals as required under the DSA.

91.     Further, Defendants also never intended to allow Priority to provide ASP with its best pricing, which is a defined term under the DSA, for specified pharmaceutical products.

92.    Also, Defendants never intended to allow Priority to maintain accurate books and records and generate contemporaneous reports that would allow Plaintiffs to monitor and if necessary, audit Priority's compliance with its obligations under the DSA and LLC Agreements.

93.    Also significantly, Defendants never intended to allow Plaintiffs to audit Priority's books and records to accurately determine if they were receiving, as promised, Priority's best prices as required under the DSA.

94.    Defendants conduct was willful, intentional, reckless and malicious.

95.    Express Scripts intended to wrongfully convert and retain Aetna Health's $75 million payment to complete the Purchase Option, and to deprive ASP the full and fair value of its acquisition and of its contractual benefits pursuant to the LLC Agreement and the DSA with Priority.

96.    Express Scripts and CuraScript knew, at all relevant times, that Priority would be required to candidly provide ASP with its third party supplier and manufacturer contracts and that Plaintiffs had the right to have full disclosure and transparency, including but not limited to the right to audit and the right to request analytic reports, to confirm that Plaintiffs were receiving Priority's best prices as required under the DSA.

97.    However, Defendants secretly decided that they would pervert, frustrate and interfere with Priority's obligations to Plaintiffs and that it would not honor those contractual obligations going forward in order to cheat ASP out of the benefit of its bargain with Priority and, in bad faith, to induce Plaintiffs to pay substantial monies to exercise the Purchase Option.

98.    Defendants' scheme was calculated to induce Aetna, ASP and Aetna Health to reasonably rely upon the misrepresentations from various levels of Priority representatives that

Priority would honor its obligations to Plaintiffs, including the important surviving obligations of the DSA.

99.    As a result of Defendants' tortious, unprivileged and unjustified conduct, Aetna, Aetna Health and ASP have suffered serious and ongoing financial injury.

100.    Plaintiffs, as a result of Defendants' misconduct, have not been provided the critical analytic and confirmatory information required under the DSA to determine Priority's best pricing covenants; nor have they been provided with the documentary evidence or an accounting of all rebates, discounts and revenues due from Priority to ASP as required under the LLC Agreement and the DSA.

101.    Further, as a result of the misconduct of Express Scripts, it is reasonable to assume that Plaintiffs have been forced to overpay millions of dollars for pharmaceuticals and other products now sold or supplied by ASP than they would have paid if Defendants had not interfered and prevented Priority from fully complying with its legal and contractual obligations under the LLC Agreement and DSA to ASP.

102.    Further, ASP has been deprived, as a result of Defendants' misconduct, of the ability to receive certain specialty drugs that are of limited availability and to which Priority had access to – which was sometimes exclusive – through its contracts with pharmaceutical manufacturers, vendors and suppliers.

103.    For example, after ASP exercised its Purchase Option, CuraScript and Express Scripts directed Priority not to provide ASP with a certain drug, in direct violation and contravention of the continuing obligations under the DSA.

104.    As a result of Plaintiffs being deprived of these specialty pharmaceutical products, Plaintiffs have been limited or prevented from opportunities to develop and grow new and emerging market opportunities, as envisioned in the LLC Agreement.

105.    Plaintiffs also, as a result of the conduct of Defendants, have been caused to suffer continuing substantial economic disadvantage and impairment of their present and prospective business opportunities

106.    From the execution of the Agreements through December 31, 2005, ASP, Aetna Health and Aetna fully performed their material obligations to Priority under the Agreements and, consistent with the parties' intent, ASP operated as an independent, stand-alone Specialty Pharmacy Business.

## COUNT I
## Tortious Interference With Existing Contracts

107.    Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

108.    As of August 1, 2004, and at all relevant times hereto, Aetna, Aetna Health, ASP and Priority were parties to the LLC Agreement. As of August 1, 2004, ASP, Aetna Health and Priority were also parties to the DSA.

109.    The LLC Agreement and the DSA were not terminable at will.

110.    Defendants were aware of the joint venture arrangement between Aetna, Aetna Health, ASP and Priority, including but not limited to Priority's continuing obligations under the DSA.

111.    Despite their awareness of Priority's obligations under the LLC Agreement and the DSA, Defendants implemented their tortious misconduct by directing Priority not to provide

relevant information or other contractual benefits to which Plaintiffs were entitled under the DSA and the LLC Agreement.

112.    Defendants intentionally, improperly, maliciously and knowingly interfered with the performance of Priority's contractual obligations under the DSA and the LLC Agreement, by causing Priority to breach its continuing and material obligations pursuant to the DSA and the LLC Agreement.

113.    Defendants possessed no privilege or justification for their intentional, reckless conduct undertaken with malicious indifference to Plaintiffs and others.

114.    Defendants' tortious misconduct caused and continues to cause, compensatory and punitive damages and irreparable harm to Plaintiffs.

115.    Defendants are liable for all damages caused to Plaintiffs for intentionally interfering with Priority's contracts with Plaintiffs and are subject to punitive damages.

116.    Defendants' conduct was malicious, willful, wanton and in reckless disregard of the lawful and legally protected interests of Plaintiffs.

117.    As a result of Defendants' misconduct, Plaintiffs have suffered damages in excess of the jurisdictional limits of this court.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendants, in an amount in excess of $100,000.00, reasonable investigation expenses, attorneys' fees, costs of suits, interests on all sums owed, and all such other legal and equitable relief that the Court deems just and proper, including exemplary damages as may be allowed by law.

## COUNT II
### Tortious Interference with Prospective Contractual Relations

118.     Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

119.     Plaintiffs had a reasonable opportunity to enter into additional contractual relationships relating to certain specialty pharmaceutical products.

120.     Defendants had the purpose or intent to harm the Plaintiffs by preventing these relations from occurring.

121.     Defendants possessed no privilege or justification for their intentional, reckless conduct undertaken with malicious indifference to Plaintiffs and others.

122.     As a result of the misconduct of Defendants, Plaintiffs have suffered damages in excess of the jurisdictional limits of this court.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendants, in an amount in excess of $100,000.00, reasonable investigation expenses, attorneys' fees, costs of suits, interests on all sums owed, and all such other legal and equitable relief that the Court deems just and proper, including exemplary damages as may be allowed by law.

## COUNT III
### Aiding and Abetting Breach of Fiduciary Duty

123.     Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

124.     Before ASP exercised its purchase option, Priority owned sixty percent (60%) of the ASP/Priority Joint Venture.

125.     Priority owed ASP, its joint venture partner, fiduciary duties.

22

126.    Priority also owed ASP fiduciary duties due to its dominant and superior position over ASP in the pharmacy industry.

127.    For example, ASP relied, *inter alia*, upon Priority's contacts, contracts and connections with drug suppliers and manufacturers.

128.    Priority, at the direction of Defendants, breached its fiduciary duties to ASP, *inter alia*, by failing to advise ASP that Express Scripts was negotiating to purchase Priority, by failing to inform ASP that Express Scripts and CuraScript had no intention of providing ASP its negotiated benefits under the DSA, including but not limited to its Best Pricing obligations and access to contracts with manufacturers, and by providing ASP with assurances concerning its intent to continue honoring obligations under the LLC Agreement and DSA after Plaintiffs exercised their purchase option when Priority knew that Defendants would not allow ASP to receive the benefits of those contracts after Plaintiffs paid them the $75 million pursuant to that option.

129.    Defendants Express Scripts and CuraScript directed, assisted and otherwise participated in Priority's breaches of its fiduciary duties to ASP.

130.    Defendants' conduct was malicious, willful, wanton and in reckless disregard of the lawful and legally protected interests of Plaintiffs.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendants, in an amount in excess of $100,000.00, reasonable investigation expenses, attorneys' fees, costs of suits, interests on all sums owed, and all such other legal and equitable relief that the Court deems just and proper, including exemplary damages as may be allowed by law.

**COUNT IV**
**Civil Conspiracy**

131.    Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

132.    Defendants Express Scripts and CuraScript, acting with common purpose, conspired with each other and Priority to do unlawful acts.

133.    Specifically, Defendants conspired to tortiously interfere with ASP's contractual rights under the LLC Agreements and the DSA.

134.    The Defendants further conspired to aid and abet Priority's breach of its fiduciary duties to ASP.

135.    Defendants performed overt acts in furtherance of their common purpose, including but not limited to directing Priority not to continue to provide ASP with the contractual benefits of the LLC Agreements and the DSA.

136.    For example, it is believed that Defendants directed Priority to provide Plaintiffs assurances concerning Priority's performance of its continuing obligations under the DSA and LLC Agreements, knowing that it would not allow Priority to honor those obligations.

137.    Further, after Plaintiffs exercised the Purchase Option, Defendants directed Priority not to provide certain drugs to ASP, in violation of Priority's continuing obligations under the DSA.

138.    ASP suffered actual legal damages as a result of Defendants' conspiracy.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendants, in an amount in excess of $100,000.00, reasonable investigation expenses, attorneys' fees, costs of suits, interests on all sums owed, and all such other legal and equitable

24

relief that the Court deems just and proper, including exemplary damages as may be allowed by law.

**COUNT V**
**Unjust Enrichment**

139.    Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

140.    Defendant Express Scripts received substantial financial benefits by engaging in its systematic interference with Plaintiffs' rights under the LLC Agreement and DSA.

141.    Specifically, on December 30, 2005, Aetna Health paid Defendant Express Scripts, with whom it had no contractual privity, $75,000,000.00 in connection with exercising the LLC Agreement's Purchase Option, and in anticipation that Aetna Health, ASP and Aetna would receive the benefit of Priority's continuing contractual obligations, after the exercise of the Purchase Option, pursuant to the DSA and the LLC Agreement.

142.    Defendants Express Scripts and CuraScript have been unjustly enriched by their interferences with and frustration of Plaintiffs' legitimate rights under the LLC Agreement and DSA and which have substantially impaired and rendered largely illusory material consideration promised by Priority under the terms of the Agreements.

143.    Although Defendants Express Scripts and CuraScript knew, before Aetna Health wired $75,000,00.00 directly to Express Scripts, that they would not allow Priority to perform its obligations under the DSA and LLC Agreements, including but not limited to providing ASP with access to its vendor, supplier and manufacturer contracts and complying with Priority's Best Pricing obligations, Defendants never honestly informed Plaintiffs that they would direct or otherwise

25

induce Priority not to comply with its continuing contractual obligations to Plaintiffs or that Priority would otherwise not perform its continuing contractual obligations to Plaintiffs.

144.    Under these circumstances, it is inequitable for Defendant Express Scripts to retain the $75,000,000.00 without payment of value to Plaintiffs.

145.    Defendant Express Scripts has been unjustly enriched in an amount in excess of $75,000,000.00 and must compensate Plaintiffs.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendants, in an amount in excess of $100,000.00, reasonable investigation expenses, attorneys' fees, costs of suits, interests on all sums owed, and all such other legal and equitable relief that the Court deems just and proper, including exemplary damages as may be allowed by law.

## COUNT V
### Detrimental Reliance

146.    Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

147.    Throughout its negotiations with Plaintiffs concerning the full effect of exercising their purchase option, Defendants Express Scripts and CuraScript repeatedly informed Plaintiffs that Priority would perform its continuing contractual obligations pursuant to the DSA and the LLC Agreements.

148.    Defendants mislead Plaintiffs into believing that Priority would honor its contractual obligations after the exercise of the purchase option.

149.    For example, in a November 18, 2005 letter to Eric Elliott sent on Express Script's letterhead, David Lowenberg stated that "[b]ased on Priority's contractual obligations

26

and our operational review, we are prepared to assist ASRx [ASP] in transitioning its product purchase arrangements to direct contractual arrangements between [ASP] and the third parties. The overall strategy for accomplishing this objective, as well as the tactics to be used, will need to be developed and discussed. We [Express Scripts] will be prepared to present such a plan for discussion."

150. Defendants also mislead Plaintiffs through their silence. Specifically, despite Plaintiffs' repeated communications with Express Scripts concerning Priority's post-option exercise contractual duties, Express Scripts never informed Plaintiffs that Priority would not perform such contractual obligations.

151. Plaintiffs were induced by and justifiably relied upon Defendant Express Scripts' misrepresentations and paid Defendant Express Scripts, with whom it had no contractual privity, $75,000,000.00 to exercise its purchase option under the LLC Agreement.

152. As a result of Plaintiffs' reliance upon Defendants' misstatements, as well as Defendants' silence concerning material benefits that Defendants knew they would prevent Plaintiffs from recognizing, Plaintiffs suffered damages, including but not limited to the $75,000,000.00 paid to Express Scripts in reliance upon Defendants' misrepresentations and silence.

153. In light of Defendants' knowing, malicious, willful, deliberate and bad faith misrepresentations and outrageous misconduct done in wanton contempt of Plaintiffs lawful rights, Plaintiffs are entitled to an award of punitive damages.

154. Plaintiffs therefore seek a return of all monies improperly acquired by Defendant Express Scripts, which has unjustly enriched Express Scripts.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendants, in an amount in excess of $100,000.00, reasonable investigation expenses, attorneys' fees, costs of suits, interests on all sums owed, and all such other legal and equitable relief that the Court deems just and proper, including exemplary damages as may be allowed by law.

## Count VI
## Express Scripts' Violation of 35 U.S.C. § 292(a)

155.    Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

156.    On September 1, 2006, Ronald A. Katz Technology Licensing, L.P. filed a complaint against Express Scripts (the "Katz Litigation") alleging infringement of sixteen patents relating to interactive phone call processing.

157.    Express Scripts entered into a confidential settlement of the Katx Litigation with Plaintiffs.

158.    In connection with the Katz Litigation, Express Scripts, as a publicly traded corporation, had a duty to investigate the factual and legal validity of Plaintiffs' claims.

159.    Accordingly, Express Scripts knew that certain of the patents claimed by Plaintiffs in the Katz Litigation had expired or were otherwise invalid.

160.    Despite knowing this, Defendant Express Scripts has posted, on its web site, a patent notice that states: "Express Scripts, Inc. and its subsidiaries are licensed under the following, and related Ronald A. Katz Technology Licensing, L.P. United States Patents: 5,128,984; 5,561,707; 5,684,863; 5,828,734; 5,917,893; 5,898,762; 5,974,120; and others." http://www.express-scripts.com/copyright/.

28

161.    Defendant Express Scripts' claim to the patents marked above is false.

162.    Specifically, United States Patents 5,561,707, 5,684,836, 5,815,551, 5,917,893, 5,898,762 and 5,974,120 have all expired.

163.    Accordingly, Express Scripts' use and/or mark of these patents is false.

164.    Defendant Express Scripts has engaged in one false marketing offense per patent for each day any expired patent appeared on its website or in any other literature.

165.    Defendant Express Scripts intended to deceive Plaintiffs and the public by representing that it possesses valid licenses for the patents listed above.

166.    Defendant Express Scripts' false patent marketing constitutes an exceptional case under 35 U.S.C. § 285.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendants, in an amount as provided by law and by 35 U.S.C. § 292(a) plus reasonable investigation expenses, and to declare Defendant's conduct exceptional under 35 U.S.C. § 285 and award Aetna attorneys' fees, costs and expenses of suit, interests on all sums owed, and all such other legal and equitable relief that the Court deems just and proper.

### Count VII
### Injunctive Relief

167.    Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

168.    Defendant Express Scripts' malicious, willful and wanton conduct, in reckless disregard of the legally protected interests of Plaintiffs, is ongoing and is causing, in addition to the economic damages as described above, irreparable injuries to Plaintiffs.

29

169.    Those injuries described above may be either irreparable or incapable of being easily calculated due to the invidious nature of the conduct and damages sustained.

170.    Economic damages alone are inadequate to compensate Plaintiffs.

171.    Further, absent relief from the Court said unlawful misconduct of Defendant Express Scripts is and will likely to be continued.

172.    Absent injunctive relief being granted by the Court it is likely that Defendants misconduct will continue.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Defendants and award all such other legal and equitable relief that the Court deems just and proper.

Respectfully submitted,

OF COUNSEL:
ELLIOTT GREENLEAF&
        SIEDZIKOWSKI, P.C.

/s/ James C. Crumlish, III ECF #JCC5010
JOHN M. ELLIOTT
JAMES C. CRUMLISH, III
JOHN P. ELLIOTT
Union Meeting Corporate Ctr. V
925 Harvest Drive
Blue Bell, PA  19422
(215) 977-1000

Counsel for Plaintiffs

DATED:  December 31, 2007

30

EXHIBIT "2"

STANDARD

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
### CIVIL DOCKET FOR CASE #: 2:07-cv-05541-TJS

AETNA INC. et al v. EXPRESS SCRIPTS, INC. et al
Assigned to: HONORABLE TIMOTHY J. SAVAGE
Cause: 28:1332 Diversity-Injunctive & Declaratory Relief

Date Filed: 01/10/2008
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**Plaintiff**

**AETNA INC.**                                   represented by **JAMES C. CRUMLISH, III**
ELLIOTGREENLEAF&
SIEDZIKOWSKI PC
UNION MTG CORP CTR V
POBX 3010
925 HARVEST DR
BLUE BELL, PA 19422
215-977-1000
Fax: 215-977-1099
Email: jcc@elliottgreenleaf.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JOHN P. ELLIOTT**
ELLIOT GREENLEAF &
SIEDZIKOWSKI P.C.
UNION MEETING CORPORATE
CENTER V, SUITE 300
925 HARVEST DRIVE
P.O. BOX 3010
BLUE BELL, PA 19422
215-977-1027
Fax: 215-977-1099
Email: jpe@elliottgreenleaf.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**AETNA SPECIALTY PHARMACY,**                    represented by **JAMES C. CRUMLISH, III**
**LLC**                                          (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JOHN P. ELLIOTT**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**AETNA HEALTH HOLDINGS,**
**LLC**

represented by **JAMES C. CRUMLISH, III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JOHN P. ELLIOTT**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**EXPRESS SCRIPTS, INC.**

represented by **CHRISTOPHER A. SMITH**
HUSCH & EPPENBERGER, LLC
190 CARONDELET PLAZA
STE. 600
ST. LOUIS, MO 63105
314-480-1500
Email:
chris.smith@huschblackwell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CHRISTOPHER J. VALERIOTE**
HUSCH BLACKWELL SANDERS
LLP
190 CARONDELET PLZ
STE 600
ST. LOUIS, MO 63105
314-480-1500
Email:
chris.valeriote@huschblackwell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JOSEPH P. CONRAN**
HUSCH BLACKWELL SANDERS
LLP
190 CARONDELET PLAZA
SUITE 600
ST. LOUIS, MO 63105
314-480-1500
Email:
joe.conran@huschblackwell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**OMRI E. PRAISS**
HUSCH BLACKWELL SANDERS LLP
190 CARONDELET PLAZA SUITE 600
ST. LOUIS, MO 63105
314-480-1500
Email: omri.praiss@huschblackwell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ROBERT V. DELL'OSA**
COZEN O'CONNOR
1900 MARKET ST
PHILA, PA 19103
215-665-2745
Fax: 215-665-2013
Email: rdellosa@cozen.com
*ATTORNEY TO BE NOTICED*

**Defendant**
**CURASCRIPTS, INC**                     represented by   **CHRISTOPHER A. SMITH**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CHRISTOPHER J. VALERIOTE**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JOSEPH P. CONRAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**OMRI E. PRAISS**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ROBERT V. DELL'OSA**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/31/2007 | 1 | COMPLAINT against EXPRESS SCRIPTS, INC., CURASCRIPTS, INC |

| | | filed by AETNA INC., AETNA SPECIALTY PHARMACY, LLC, AETNA HEALTH HOLDINGS, LLC. Filing fee $ 350 receipt number 944754. JURY TRIAL DEMAND. (rf, ) (Entered: 01/10/2008) |
| --- | --- | --- |
| 01/10/2008 | 2 | PLAINTIFFS MOTION FOR LEAVE TO FILE UNDER SEAL CONFIDENTIAL BUSINESS AGREEMENTS, CERTIFICATE OF SERVICE filed by AETNA INC., AETNA SPECIALTY PHARMACY, LLC, AETNA HEALTH HOLDINGS, LLC.(rf, ) (Entered: 01/10/2008) |
| 01/10/2008 | | 2 Original Summons Issued as to EXPRESS SCRIPTS, INC., CURASCRIPTS, INC., Forwarded to Counsel on 1/3/08. (rf, ) (Entered: 01/10/2008) |
| 01/16/2008 | 3 | NOTICE of Appearance by JOHN P. ELLIOTT on behalf of AETNA INC., AETNA SPECIALTY PHARMACY, LLC, AETNA HEALTH HOLDINGS, LLC with certificate of service(ELLIOTT, JOHN) (Entered: 01/16/2008) |
| 01/16/2008 | 4 | Disclosure Statement Form pursuant to FRCP 7.1 with Certificate of Service by AETNA INC., AETNA SPECIALTY PHARMACY, LLC, AETNA HEALTH HOLDINGS, LLC.(CRUMLISH, JAMES) (Entered: 01/16/2008) |
| 01/16/2008 | 5 | Disclosure Statement Form pursuant to FRCP 7.1 including Aetna Inc. with Certificate of Service by AETNA SPECIALTY PHARMACY, LLC.(CRUMLISH, JAMES) (Entered: 01/16/2008) |
| 01/16/2008 | 6 | Disclosure Statement Form pursuant to FRCP 7.1 including Aetna Inc. with Certificate of Service by AETNA HEALTH HOLDINGS, LLC. (CRUMLISH, JAMES) (Entered: 01/16/2008) |
| 01/16/2008 | 7 | ORDER THAT THIS CASE IS REASSIGNED FROM HONORABLE BRUCE W. KAUFFMAN TO HONORABLE TIMOTHY J. SAVAGE FOR ALL FURTHER PROCEEDINGS SIGNED BY MICHAEL E. KUNZ ON 1/15/08. 1/16/08 ENTERED AND COPIES E-MAILED. (ah) (Entered: 01/16/2008) |
| 01/23/2008 | 8 | CERTIFICATE OF SERVICE by AETNA INC., AETNA SPECIALTY PHARMACY, LLC, AETNA HEALTH HOLDINGS, LLC *of Complaint and Summons on Express Scripts, Inc.* (CRUMLISH, JAMES) (Entered: 01/23/2008) |
| 01/23/2008 | 9 | CERTIFICATE OF SERVICE by AETNA INC., AETNA SPECIALTY PHARMACY, LLC, AETNA HEALTH HOLDINGS, LLC *of Complaint and Summons on CuraScript, Inc.* (CRUMLISH, JAMES) (Entered: 01/23/2008) |
| 02/04/2008 | 10 | NOTICE by EXPRESS SCRIPTS, INC., CURASCRIPTS, INC, EXPRESS SCRIPTS, INC., CURASCRIPTS, INC *of Filing Stipulation of Defendants for Extension of Time to Respond to the Complaint* (DELL'OSA, ROBERT) (FILED IN ERROR BY ATTORNEY; COPY FORWARDED TO JUDGE FOR APPROVAL) Modified on 2/5/2008 (nd). (Entered: 02/04/2008) |
| | | |

Case 1:08-cv-00148-LJF    Document 8-3    Filed 04/14/2008    Page 6 of 9

| 02/11/2008 | 11 | ORDER THAT A PRETRIAL CONFERENCE IS SET FOR 3/18/2008 10:30 AM BEFORE HONORABLE TIMOTHY J. SAVAGE. SIGNED BY HONORABLE TIMOTHY J. SAVAGE ON 2/11/08. 2/11/08 ENTERED AND COPIES E-MAILED.(stb, ) (Entered: 02/11/2008) |
|---|---|---|
| 02/21/2008 | 12 | ORDER THAT PLAINTIFFS' MOTION FOR LEAVE TO FILE UNDER SEAL CONFIDENTIAL BUSINESS AGREEMENTS IS GRANTED. IT IS FURTHER ORDERED THAT PLAINTIFFS SHALL FILE UNDER SEAL THE AETNA SPECIALTY PHARMACY LLC LIMITED LIABILITY COMPANY AGREEMENT, DATED AUGUST 1, 2004, AND THE DRUGS SUPPLY AGREEMENT, DATED AUGUST 1, 2004, TOGETHER WITH ALL ATTACHMENTS. SIGNED BY HONORABLE TIMOTHY J. SAVAGE ON 02/21/08.02/22/08 ENTERED AND COPIES E-MAILED.(ac, ) (Entered: 02/22/2008) |
| 02/22/2008 | 13 | MOTION for Pro Hac Vice *Admission of Christopher J. Valeriote* filed by EXPRESS SCRIPTS, INC., CURASCRIPTS, INC.with Certificate of Service. (Attachments: # 1 Text of Proposed Order in Support of Motion for Pro Hac Vice Admission of Christopher J. Valeriote)(DELL'OSA, ROBERT) (Entered: 02/22/2008) |
| 02/22/2008 | 14 | MOTION for Pro Hac Vice *Admission of Omri E. Praiss* filed by EXPRESS SCRIPTS, INC., CURASCRIPTS, INC.with Certificate of Service. (Attachments: # 1 Text of Proposed Order in Support of Pro Hac Vice Admission of Omri E. Praiss)(DELL'OSA, ROBERT) (Entered: 02/22/2008) |
| 02/22/2008 | 15 | MOTION for Pro Hac Vice *Admission of Joseph P. Conran* filed by EXPRESS SCRIPTS, INC., CURASCRIPTS, INC.with Certificate of Service. (Attachments: # 1 Text of Proposed Order in Support of Motion for Pro Hac Vice Admission of Joseph P. Conran)(DELL'OSA, ROBERT) (Entered: 02/22/2008) |
| 02/22/2008 | 16 | MOTION for Pro Hac Vice *Admission of Christopher A. Smith* filed by EXPRESS SCRIPTS, INC., CURASCRIPTS, INC.with Certificate of Service. (Attachments: # 1 Text of Proposed Order in Support of Motion for Admission Pro Hac Vice of Christopher A. Smith)(DELL'OSA, ROBERT) (Entered: 02/22/2008) |
| 02/25/2008 | 17 | MOTION for Pro Hac Vice *of Joseph P. Conran* filed by EXPRESS SCRIPTS, INC., CURASCRIPTS, INC, EXPRESS SCRIPTS, INC., CURASCRIPTS, INC.Certificate of Service.(DELL'OSA, ROBERT) (Entered: 02/25/2008) |
| 02/25/2008 | 18 | MOTION for Pro Hac Vice *of Christopher A. Smith* filed by EXPRESS SCRIPTS, INC., CURASCRIPTS, INC, EXPRESS SCRIPTS, INC., CURASCRIPTS, INC.Certificate of Service.(DELL'OSA, ROBERT) (Entered: 02/25/2008) |
| 02/25/2008 | 19 | MOTION for Pro Hac Vice *of Christopher J. Valeriote* filed by EXPRESS SCRIPTS, INC., CURASCRIPTS, INC, EXPRESS SCRIPTS, INC., CURASCRIPTS, INC.Certificate of Service. |

| | | (DELL'OSA, ROBERT) (Entered: 02/25/2008) |
|---|---|---|
| 02/25/2008 | 20 | MOTION for Pro Hac Vice *of Omri E. Praiss* filed by EXPRESS SCRIPTS, INC., CURASCRIPTS, INC, EXPRESS SCRIPTS, INC., CURASCRIPTS, INC.Certificate of Service.(DELL'OSA, ROBERT) (Entered: 02/25/2008) |
| 02/27/2008 | 21 | NOTICE by AETNA INC., AETNA SPECIALTY PHARMACY, LLC, AETNA HEALTH HOLDINGS, LLC *OF FILING UNDER SEAL* (CRUMLISH, JAMES) (Entered: 02/27/2008) |
| 02/27/2008 | 22 | DRUG SUPPLY AGREEMENT, DATED AUGUST 1, 2004 by AETNA INC., AETNA SPECIALTY PHARMACY, LLC, AETNA HEALTH HOLDINGS, LLC. (*FILED UNDER SEAL*). (ap, ) (Entered: 02/28/2008) |
| 02/27/2008 | 23 | AETNA SPECIALITY PHARMACY, LLC LIMITED LIABILITY COMPANY AGREEMENT, DATED AUGUST 1, 2004 by AETNA INC., AETNA SPECIALTY PHARMACY, LLC, AETNA HEALTH HOLDINGS, LLC. (*FILED UNDER SEAL*). (ap, ) (Entered: 02/28/2008) |
| 02/28/2008 | 24 | ORDER THAT MOTION FOR PRO HAC VICE OF JOSEPH P. CONRAN, ESQUIRE IS GRANTED. SIGNED BY HONORABLE TIMOTHY J. SAVAGE ON 02/28/08.02/28/08 ENTERED AND COPIES MAILED AND E-MAILED.(ac, ) (Entered: 02/28/2008) |
| 02/28/2008 | 25 | ORDER THAT THE MOTION FOR PRO HAC VICE OF OMRI E. PRAISS, ESQUIRE IS GRANTED. SIGNED BY HONORABLE TIMOTHY J. SAVAGE ON 02/28/08.02/28/08 ENTERED AND COPIES MAILED AND E-MAILED.(ac, ) (Entered: 02/28/2008) |
| 02/28/2008 | 26 | ORDER THAT THE MOTION FOR PRO HAC VICE OF CHRISTOPHER A. SMITH, ESQUIRE, IS GRANTED. SIGNED BY HONORABLE TIMOTHY J. SAVAGE ON 02/28/08.02/28/08 ENTERED AND COPIES MAILED AND E-MAILED.(ac, ) (Entered: 02/28/2008) |
| 02/28/2008 | 27 | ORDER THAT THE MOTION FOR PRO HAC VICE OF CHRISTOPHER J. VALERIOTE, ESQUIRE, IS GRANTED. SIGNED BY HONORABLE TIMOTHY J. SAVAGE ON 02/28/08.02/28/08 ENTERED AND COPIES MAILED AND E-MAILED.(ac, ) (Entered: 02/28/2008) |
| 02/29/2008 | 28 | MOTION to Transfer *Venue* filed by EXPRESS SCRIPTS, INC., CURASCRIPTS, INC. MEMORANDUM AND Certificate of Service. (DELL'OSA, ROBERT) Modified on 3/4/2008 (afm, ). (Entered: 02/29/2008) |
| 02/29/2008 | 29 | MOTION to Dismiss filed by EXPRESS SCRIPTS, INC., CURASCRIPTS, INC. MEMORANDUM AND Certificate of Service. (DELL'OSA, ROBERT) Modified on 3/4/2008 (afm, ). (Entered: 02/29/2008) |

| 02/29/2008 | 30 | Disclosure Statement Form pursuant to FRCP 7.1 including Express Scripts, Inc. by EXPRESS SCRIPTS, INC., CURASCRIPTS, INC. (DELL'OSA, ROBERT) (Entered: 02/29/2008) |
|---|---|---|
| 02/29/2008 | 31 | Disclosure Statement Form pursuant to FRCP 7.1 by EXPRESS SCRIPTS, INC., CURASCRIPTS, INC.(DELL'OSA, ROBERT) (Entered: 02/29/2008) |
| 03/03/2008 | 32 | ORDER THAT PRETRIAL CONFERENCE IS RESCHEDULED FOR 4/3/2008 09:00 AM BEFORE HONORABLE TIMOTHY J. SAVAGE.SIGNED BY HONORABLE TIMOTHY J. SAVAGE ON 03/03/08. 03/04/08 ENTERED AND COPIES MAILED, E-MAILED. (rf, ) (Entered: 03/04/2008) |
| 03/06/2008 | 33 | ORDER THAT THE PRETRIAL CONFERENCE IS RESCHEDULED FOR 4/7/2008 01:30 PM BEFORE HONORABLE TIMOTHY J. SAVAGE. SIGNED BY HONORABLE TIMOTHY J. SAVAGE ON 3/6/08. 3/7/08 ENTERED AND COPIES MAILED, E-MAILED.(stb, ) (Entered: 03/07/2008) |
| 03/07/2008 | 34 | NOTICE by EXPRESS SCRIPTS, INC., CURASCRIPTS, INC *of Change of Firm Name and Email Addresses* (DELL'OSA, ROBERT) (Entered: 03/07/2008) |
| 03/13/2008 | 35 | MOTION to Modify *Pleading Deadlines -- Uncontested* filed by AETNA INC., AETNA SPECIALTY PHARMACY, LLC, AETNA HEALTH HOLDINGS, LLC.Certificate of Counsel, Certificate of Service.(ELLIOTT, JOHN) (Entered: 03/13/2008) |
| 03/18/2008 | 36 | ORDER THAT THE PARTIES' UNCONTESTED MOTION TO MODIFY PLEADING DEADLINES IS GRANTED AND PLAINTIFF'S SHALL FILE THEIR RESPONSES TO THE DEFENDANTS' MOTION TO DISMISS AND MOTION TO TRANSFER VENUE BY 03/28/2008; AND, NO LATER THAN 04/04/2008 THE DEFENDANTS SHALL FILE THEIR REPLY MEMORANDA, IF ANY, ETC. SIGNED BY HONORABLE TIMOTHY J. SAVAGE ON 03/18/2008. 03/18/2008 ENTERED AND COPIES E-MAILED.(nda) (Entered: 03/18/2008) |
| 03/28/2008 | 37 | RESPONSE in Opposition re 29 MOTION to Dismiss *proposed Order and Certificate of Service* filed by AETNA INC., AETNA SPECIALTY PHARMACY, LLC, AETNA HEALTH HOLDINGS, LLC. (CRUMLISH, JAMES) (Entered: 03/28/2008) |
| 03/28/2008 | 38 | RESPONSE in Opposition re 28 MOTION to Transfer *Venue proposed Order and Certificate of Service* filed by AETNA INC., AETNA SPECIALTY PHARMACY, LLC, AETNA HEALTH HOLDINGS, LLC. (CRUMLISH, JAMES) (Entered: 03/28/2008) |
| 04/02/2008 | 39 | Discovery Plan by AETNA INC., AETNA SPECIALTY PHARMACY, LLC, AETNA HEALTH HOLDINGS, LLC, EXPRESS SCRIPTS, INC., CURASCRIPTS, INC.with Certificate of Service. (Attachments: # 1 Exhibit ESI1, # 2 Exhibit ESI2)(ELLIOTT, JOHN) Modified on |

| | | 4/3/2008 (le, ). (Entered: 04/02/2008) |
|---|---|---|
| 04/03/2008 | 40 | REPLY to Response to Motion re 28 MOTION to Transfer *Venue* filed by EXPRESS SCRIPTS, INC., CURASCRIPTS, INC. (DELL'OSA, ROBERT) (Entered: 04/03/2008) |
| 04/03/2008 | 41 | REPLY to Response to Motion re 29 MOTION to Dismiss filed by EXPRESS SCRIPTS, INC., CURASCRIPTS, INC. (DELL'OSA, ROBERT) (Entered: 04/03/2008) |
| 04/07/2008 | 42 | SCHEDULING ORDER: ALL MOTIONS TO AMEND THE COMPLAINT AND TO JOIN OR ADD ADDITIONAL PARTIES SHALL BE FILED WITHIN 14 DAYS OF THE DATE OF THIS ORDER; ALL FACT DISCOVERY DUE BY 10/3/2008; COUNSEL FOR EACH PARTY SHALL SERVE UPON COUNSEL FOR EACH PARTY THE INFORMATION REFERRED TO IN FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)(B) BY EXPERT REPORT OR ANSWER TO EXPERT INTERROGATORY NO LATER THAN 11/7/08. IF EVIDENCE IS SOLELY TO CONTRADICT OR REBUT EVIDENCE, SERVE ON OTHER PARTY BY 1121/08. EXPERT DEPOSITIONS BY 12/5/08. COUNSEL SHALL CONTACT JUDGE RESTREPOS CHAMBERS ON OR BEFORE 09/5/08 TO SCHEDULE A SETTLEMENT CONFERENCE. MOTIONS FOR SUMMARY JUDGMENT AND DAUBERT MOTIONS DUE 01/09/09. DEFENDANT PRETRIAL MEMO DUE BY 2/6/2009. PLAINTIFF PRETRIAL MEMO DUE BY 2/6/2009. MOTIONS IN LIMINE DUE BY 2/20/2009. FINAL PRETRIAL CONFERENCE SET FOR 3/3/2009 10:00 AM IN JUDGE'S CHAMBERS BEFORE HONORABLE TIMOTHY J. SAVAGE. TRIAL DATE SET FOR 3/12/2009 AT 9:00 AM IN COURTROOM 9A. ALL OTHER COURT DATES OUTLINED HEREIN. SIGNED BY HONORABLE TIMOTHY J. SAVAGE ON 4/7/08. 4/8/08 ENTERED AND COPIES E-MAILED (rf, ) (Entered: 04/08/2008) |
| 04/07/2008 | 43 | ORDER GOVERNING ELECTRONIC DISCOVERY, AS OUTLINED HEREIN.SIGNED BY HONORABLE TIMOTHY J. SAVAGE ON 4/7/08. 4/8/08 ENTERED AND COPIES E-MAILED (rf, ) (Entered: 04/08/2008) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/14/2008 12:13:50 | | |
| **PACER Login:** | er0049 | **Client Code:** | 711-240 |
| **Description:** | Docket Report | **Search Criteria:** | 2:07-cv-05541-TJS |
| **Billable Pages:** | 4 | **Cost:** | 0.32 |

EXHIBIT "3"

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AETNA INC., AETNA SPECIALTY PHARMACY, LLC., and AETNA HEALTH HOLDINGS, LLC** : | **CIVIL ACTION** |
| : | |
| **Plaintiffs,** : | |
| : | |
| **v.** : | **NO. 07-5541 (TJS)** |
| : | |
| **EXPRESS SCRIPTS, INC. and CURASCRIPT, INC.** : | |
| : | |
| **Defendants.** : | |

### <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2008, upon consideration of Defendants' Motion to Transfer Venue, and Plaintiffs' Response in Opposition thereto, it is hereby **ORDERED** and **DECREED** that Defendants' Motion is **DENIED**.

_____
TIMOTHY J. SAVAGE
United States District Judge

SJGJR: 91315v1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AETNA INC., AETNA SPECIALTY PHARMACY, LLC., and AETNA HEALTH HOLDINGS, LLC<br><br>        Plaintiffs,<br><br>    v.<br><br>EXPRESS SCRIPTS, INC. and CURASCRIPT, INC.<br><br>        Defendants. | : CIVIL ACTION<br>:<br>:<br>:<br>:<br>:<br>:<br>: NO. 07-5541 (TJS)<br>:<br>:<br>:<br>:<br>:<br>: |

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER VENUE

Plaintiffs, Aetna Specialty Pharmacy, Inc. ("ASP"), Aetna Health Holdings, LLC ("Aetna Health"), and Aetna, Inc. ("Aetna") (collectively, "Plaintiffs") hereby submit this Response in Opposition to Defendants' Motion to Transfer Venue.

I.    **INTRODUCTION**

In seeking to deny the Plaintiffs their choice of forum in the district of their principal office, Defendants Express Scripts, Inc. ("Express Scripts") and CuraScript, Inc. ("CuraScript") (collectively, "Defendants") rely exclusively on forum selection clauses contained in two agreements *to which Defendants are not and never were parties*. Rather, the agreements are between Plaintiffs and *a non-party to this case*, *i.e.* Priority Healthcare Corporation ("Priority"). In fact, Express Scripts and CuraScript had no association with, and were not even contemplated by, Plaintiffs and Priority at the time they entered these agreements. This alone establishes that

Defendants have no rights under the agreements, and certainly cannot create for themselves any contract right to invoke the forum selection clauses contained therein.[1]

A non-party to an agreement cannot enforce a forum selection clause unless the non-party had a foreseeable interest in the contract, contemplated by the actual parties *at the time of its formation*. *In re Mushroom Transport Co., Inc.* 247 B.R. 395, 398-99 (E.D. Pa. 2000). Significantly, Defendants rely almost exclusively on cases in which a non-signatory was closely involved with the signatories and the subject matter of the contract *at the time of the contract's formation*. Here, at the time these agreements were entered, Express Scripts and CuraScript had no involvement whatsoever with the subject matter of the agreements, nor did they have any relationship at all with Priority, let alone any control over Priority. These crucial facts are undisputed and dispositive.

Moreover, the plain language of the agreements themselves expressly disclaims any intent of the parties to provide any such rights to third parties such as Express Scripts and CuraScript. For example, the Limited Liability Company Agreement provides: "no Person other than a Party hereto, shall have any rights or remedies under this Operating Agreement." *See* Section 15.6 of the Limited Liability Company Agreement ("LLC Agreement").

Further, the contracts expressly foreclose any possible assignment or transfer of any rights contract by any party (including in connection with a merger or sale or a party) … without the prior written consent of the other parties." *See* LLC Agreement, Section 15.5; Section 9.2 of the Drug Supply Agreement ("DSA"). Here, there was no such assignment or transfer of rights to Express Scripts or CuraScript, which is another undisputed and dispositive fact.

---

[1] Of course, Defendants are not suggesting they have any obligations under the agreements. Apparently, they seek to reap only the possible benefits from agreements to which they are not parties while disclaiming any obligations thereunder.

2

Thus, Defendants ask this Court to ignore not only controlling precedent, but also the plain terms of commercial contracts between sophisticated parties, who took pains to craft contracts that foreclose precisely what Defendants are attempting to do by their motion.

Finally, aside from precedent and the plain language of the contract foreclosing their arguments, Defendants' motion must be denied because they fail to establish that any "private" or "public" interests would outweigh Plaintiffs' rights and interests in their chosen forum, which is the "home" district of their relevant principal place of business. Defendants' heavy burden requires they demonstrate that the convenience of the parties strongly favors transferring the case out of the forum chosen by Plaintiffs. However, Defendants fail to demonstrate at all, let alone with the requisite "particularity" required by law, any alleged inconvenience caused by Plaintiff's choice of forum.    In fact, Defendants admit that the forum they seem to prefer (at least for purposes of avoiding this district) -- *i.e.* Delaware -- is no more or less a convenient forum than this district. Defendants further admit that Delaware has no substantial interest in this litigation that would outweigh Plaintiffs' choice of forum. For these reasons, and the reasons further detailed below, Defendants' Motion should be denied.

## II.    FACTUAL BACKGROUND

### A.    Formation of the ASP Joint Venture.

On August 1, 2004, Plaintiffs and Priority entered into a joint venture for the purpose of establishing, building, owning and operating a stand alone integrated specialty pharmacy business and included Clinical Programs. *See* Complaint at ¶18. The joint venture was to conduct business as ASP, which was to be focused on building and operating "best in class" specialty pharmacy services, and using leveraged buying power to reduce health care costs and deliver comprehensive clinical program management for ASP customers. *See* Complaint at ¶19.

3

Priority agreed to provide and supply, or otherwise assure ASP at "best prices," up to all of ASP's requirements for specialty pharmaceuticals required under the agreements. *See* Complaint at ¶34.

In forming the joint venture, Plaintiffs and Priority entered into the LLC Agreement and the DSA Agreement (collectively referred to as the "Agreements"). *See* Complaint at ¶18. Significantly, at the time the Agreements were signed, neither of the Defendants had any company affiliation or relationship with the parties. Defendants were not signatories to the Agreements, nor were Defendants contemplated by anyone as having any involvement whatsoever in the Agreements or any existing or planned association with the parties.

**B.    Express Scripts Purchases Priority, triggering Aetna Health's Purchase Option**

On October 14, 2005, approximately fourteen months *after* Plaintiffs and Priority entered the LLC Agreement and the DSA, Express Scripts acquired Priority in a cash transaction for $1.3 billion. *See* Complaint at ¶52. The acquisition was accomplished through the merger of Express Scripts' wholly-owned subsidiary, CuraScript, with and into Priority. *See* Complaint at ¶52.[2]

Before Express Scripts purchased Priority for $1.3 billion, Express Scripts conducted a thorough due diligence of Priority's operations and contractual obligations, including but not limited to Priority's obligations and commitments to Plaintiffs under the LLC Agreement and the DSA. *See* Complaint at ¶60. During Express Scripts' negotiations with and "study" of Priority, Express Scripts became aware of Priority's duties and obligations to Plaintiffs under the

---

[2] Previously, on January 30, 2004, approximately five months *after* Priority and Plaintiffs entered into the Agreements, Express Scripts had purchased CuraScript, enhancing its market power and advancing Express Scripts' intention to dominate the Specialty Pharmacy Market. *See* Complaint at ¶55.

Agreements, and undertook a course of intentional conduct to conspire and otherwise effect a scheme to interfere with Plaintiffs' rights under the contracts. *See* Complaint at ¶62.

On October 25, 2005, after Defendants acquired Priority, Plaintiffs gave Priority notice that Plaintiffs intended to exercise their "Purchase Option" in the LLC Agreement, whereby Aetna would buy Priority's membership interest in the LLC Agreement on December 30, 2005. *See* Complaint at ¶69; LLC Agreement 6.3(a). On the same day (October 25, 2005), in response to Plaintiffs' Notice of Purchase Option Exercise, Express Scripts (which, by this time, had acquired Priority) advised it would be responsible for speaking on behalf of Priority for the terms of the ASP Purchase Option. After two months of negotiations, on December 30, 2005, Aetna Health wired, at the direction of Express Scripts, $75 million into Express Scripts' bank as payment for the "Purchase Option." *See* Complaint at ¶79.

The DSA provided that Priority would, subsequent to exercise of the "Purchase Option," continue to supply certain pharmaceuticals at Priority's "best prices" and that Priority would also assist ASP to transition Priority's direct supply agreements with pharmaceutical manufacturers and wholesalers, including, *inter alia*, by providing ASP with pharmaceutical vendor and supplier contracts, by providing ASP with lists of key contacts at certain pharmaceutical vendors and suppliers and setting up meetings with such vendors and suppliers. *See* Complaint at ¶51; DSA Sections 3.1, 7.24.

Further, Priority agreed to provide to ASP such reports as it may request regarding Priority's acquisition of Specialty Pharmaceuticals and regarding Priority's costs for such products. *See* DSA Section 3.4. Priority also agreed to provide full access, including for "audit and review" and making copies, to all books and records of Priority that relate to its performance of duties regarding the "best prices" guarantees to ASP. *Id.* at Section 4.1.

5

**C.    Express Scripts Takes the $75,000,000.00 and Deprives Plaintiffs of Their Contractual Benefits**

Subsequent to the closing and payment of the $75 million purchase price, Express Scripts and CuraScript continued to induce Plaintiffs to believe that they intended to ensure Priority's compliance with all the material terms of the Agreements. *See* Complaint at ¶80. However, it is now apparent that Defendants never intended to allow Priority to comply with its legal obligations to ASP, including the obligation to provide ASP with "best pricing." *See* Complaint at ¶¶ 90, 91.

As a result of Defendants' tortious and unprivileged conduct, Plaintiffs have suffered serious ongoing financial injury, including being forced to overpay millions of dollars for pharmaceutical and other products than they would have paid if Defendants had not interfered and not prevented Priority from fully complying with its contractual obligations to ASP. *See* Complaint at ¶101. Additionally, as a result of Defendants' misconduct, ASP has been denied the ability to receive certain specialty drugs that have limited availability, and to which Priority had access – which was sometimes exclusive – through its contracts with pharmaceutical manufacturers, vendors and suppliers. *See* Complaint at ¶102.

On December 31, 2007, Plaintiffs commenced this action for damages and equitable relief. Presently before the Court is Defendants' Motion to Transfer Venue.[3]

---

[3] Defendants also moved to dismiss two claims in the Complaint, while not filing any answer or motion in response to the remaining claims.

III.    **ARGUMENT**

A.    **Defendants Have No Rights Under the Agreements and Cannot Invoke the Forum Selection Clauses**

Although non-signatories to contracts have infrequently been permitted to enforce forum selection clauses, a non-signatory cannot enforce such a clause unless the non-signatory had a foreseeable interest in the contract *at the time of its formation*. *In Re Mushroom Transp. Co., Inc.*, 247 B.R. 395, 398-399 (E. D. Pa. 2000).[4]

"Courts have held that such clauses are enforceable only against nonsignatories that are closely related to the contractual relationship or that should have foreseen governance by the clause. Because a close relationship or foreseeability is required to enforce such a clause *against* a non-party to an agreement, it is axiomatic that the same would be required for such a clause to be enforceable *by* a non-party." *In Re Mushroom Transp., Co., Inc.* at 398 (emphasis in original, citations omitted). As the Court explained:

> There is an argument to be made that non-parties to a contract seeking to enforce a forum selection clause should be required to make an even greater showing than parties to a contract seeking to enforce such a clause against non-parties. It is one thing for a party, with rights and obligations under a contract, to seek its enforcement against others. It is quite another, however, for an [sic] non-party individual or organization to seek to enforce a particular clause against a contracting party. It stretches logic and reason to assert that non-party parties with absolutely no rights or obligations under a contract (indeed, who were nowhere in the picture

---

[4] Generally, a forum selection clause cannot be enforced by or against a non-signatory to the contract. *Complete Healthcare Resources Eastern, Inc. v. Pacific Life Ins. Co. Ltd.*, 2006 WL 3742745, *2 (E.D. Pa., Dec. 14, 2006); *Lackner v. Penn Ctr. Investments, Inc.*, 1993 WL 259429 (E.D. Pa., June 30, 1993). In declining to enforce a forum selection clause against a non-signatory, courts in this District have explained that "[i]t is well settled that a third party cannot have his rights altered, compromised, or redefined by the provisions of a contract he has not accepted." *Morris Black & Sons v. Zitone Construction and Supply Co., Inc.*, 2004 WL 2223310, *2 (E.D. Pa., Oct. 1, 2004). *See also Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1296-1297 (3d Cir. 1996) (rejecting argument that a contractual arbitration clause applied to a non-signatory of the contract).

> when the contract was signed) should be allowed to enforce a clause
> against a party to the contract in later litigation.

*In Re Mushroom Transp., Co., Inc.* at 398 n.4.

Significantly, "[t]he cases in which courts have concluded that there was a sufficiently close relationship have all involved non-parties who were proximate to the contract *at the time of formation*, such as third-party beneficiaries, officers in a signatory corporation, or owners of a signatory corporation." *Id.* at 398-399 (emphasis added, citations omitted).

In *Mushroom Transp. Co., Inc.* the Eastern District of Pennsylvania rejected a non-signatory's attempt to enforce a forum selection clause where it was not involved in the formation of the relevant agreement and any involvement it may have had with the signatories was not remotely foreseeable at the time the agreement was signed. *Id.* at 399. Any benefit received by the non-signatory, or relationship with the signatories, was purely a product of happenstance and, consequently, did not imbue any rights in the non-signatory. *Id.* Here, there is no dispute that Express Scripts and CuraScript's involvement in this contract is pure "happenstance": it was non-existent and not contemplated at the time Plaintiffs and Priority entered into the Agreements.

Nor can Defendants rely on any "third party beneficiary" theory. In determining whether a forum selection or arbitration clause can be enforced by or against a non-signatory to the contract, courts often apply a third party beneficiary analysis. "A third party beneficiary of a contract is bound by a contractual term requiring arbitration where its claim arises out of the underlying contract to which it was an intended third party beneficiary." *Winner v. Etkin & Co., Inc.*, 2008 WL 554981, *1 (W.D. Pa., Feb. 28, 2008). "Under Pennsylvania law, a party is an intended third-party beneficiary if both parties to the contract express an intention to benefit the third party *in the contract itself*, or if recognition of a right to performance in the beneficiary is

appropriate to effectuate the intention of the parties and the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Id.* at *2 (emphasis in original, citations omitted). "[S]uch rights exist in only 'narrow circumstances' where the contracting parties evidence a 'clear intent' to include the third party as an intended beneficiary." *Dougherty v. Royal Zenith Corp.*, 1990 WL 61756, *3 (E.D. Pa., May 4, 1990).

Here, contrary to creating rights in third party beneficiaries, the LLC Agreement (and the DSA) *specifically states that there are <u>no</u> third party beneficiaries and no other party has any rights thereunder*:

> 15.6  **No Third Party Beneficiaries.**    Except as otherwise provided herein, no Person other than a Party hereto shall have any rights or remedies under this Operating Agreement.

LLC Agreement at Section 15.6.  Courts have explicitly held that such a provision prevents enforcement of a forum selection clause against a non-signatory to a contract. *See Villanova, Ltd. v. Convergys*, 2001 WL 868662, *1 (E.D. Pa., April 24, 2001).  Here, Plaintiffs and Priority obviously did not (and could not) indicate any "clear intent" to include Defendants as intended beneficiaries.[5]

In *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates*, 269 F.3d 187 (3d Cir. 2001), the Third Circuit addressed a similar situation in the context of a non-signatory to an agreement to arbitrate. There, a subsidiary of the plaintiff and one of the defendants entered into a joint venture, forming a third company.  The agreement forming the

---

[5] Conspicuously and fatally absent from Defendants' argument is any concession that they are bound by the other terms of the LLC Agreement and the DSA.  In order for a non-signatory to be considered "closely related" enough to a contractual relationship to enforce a forum selection clause, the party seeking to enforce the clause must agree to be bound by the remaining terms of the agreement at issue. *Pioneer Commercial Funding Corp. v. Norick*, 2006 WL 3354141, *3 (E.D. Pa., Nov. 17, 2006).

joint venture specifically referred to the limited role plaintiff, the parent company, would play in the joint venture. Following a dispute between the parties, plaintiff commenced an action against the joint venture defendant and its parent corporation, not under the joint venture agreement, but for an alleged violation of an oral contract and for misrepresentation. The defendants sought to enforce the joint venture agreement's arbitration clause against the non-signatory plaintiff.

However, the Third Circuit rejected the defendants' attempts to impose the arbitration clause on the non-signatory plaintiff even though the joint venture agreement specifically referenced the plaintiff. Observing that nothing in the joint venture agreement indicated that the plaintiff was intended to be a third party beneficiary, the Court concluded that "if it was not the promisee's intention to confer direct benefits upon a third party, but rather such third party happens to benefit from the performance of the promise either coincidentally or indirectly, then the third party will have no enforceable rights under the contract." *Id.* at 197. In fact, the Court noted that simply because the non-signatory had **negotiated** the joint venture agreement, without more, "has nothing to do with whether it was a third party beneficiary." *Id.*

Defendants' relationship with Priority, and the LLC Agreement and DSA, is even more distanced than that of the non-signatory in *E.I. DuPont*. Defendant Express Scripts did not acquire Priority until October 14, 2005, approximately fourteen months after the execution of the LLC Agreement and the DSA. *See* Complaint at ¶52. It is undisputed that Defendants did ***not*** negotiate either the LLC Agreement or the DSA. Express Scripts was ***not*** the parent company of Priority at the time the LLC Agreement and DSA were executed.

Defendants' motion is asking this Court to disregard Third Circuit precedent, the plain language of the contract, and common sense.

Every case cited by Defendants, including *Jordan v. SEI Corp.*, 1996 WL 296540 (E.D. Pa., June 4, 1996), is distinguishable on its face. In nearly all of those cases, the non-signatory seeking to enforce, or against whom a signatory seeks to enforce, a forum selection clause was closely involved with the signatories and the subject matter of the controlling contract *at the time of the contract's formation*. *See Jordan, supra; Environmental Tectonics Corp. v. Royal Thai Air Force*, 1994 WL 82002 (E.D. Pa., March 15, 1994); *Hay Acquisition Co., Inc. v. Schneider*, 2005 WL 1017804 (E.D. Pa., April 27, 2005); *Cinema Laser Technology, Inc. v. Hampson*, 1991 WL 90913 (D.N.J., May 30, 1991); *Clinton v. Janger*, 583 F.Supp. 284 (N.D. Ill. 1984).

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190 (3d Cir. 1983), is inapposite also, because the non-signatory seeking to enforce the forum selection clause was an entity that the contract specifically contemplated would be engaged in business with the signatories. Nothing in either the LLC Agreement or DSA contemplates or foresees any transactions with either Express Scripts or CuraScript. Further, neither *Coastal Steel Corp.* nor any of the other cases cited by Defendants addresses a contract, like the LLC Agreement and the DSA, that expressly disclaim any third party beneficiaries. Moreover, to the extent the parties here generally contemplated potential mergers or acquisitions in the future, they were careful to do so in a manner that expressly prevented precisely what Defendants are attempting to do here - - to prevent any such merged or acquiring company from having any rights (including any rights under a forum selection clause of the Agreements) transferred or assigned to the acquiring company. *See* LLC Agreement, Section 15.5.

It is telling that Defendants desperately resort to manipulating the contract's definition of "Affiliate" -- divorced from the context in which they seek to use it here -- in an effort to re-write the contract, so as to insert the word "affiliate" into the forum selection clauses, while erasing

11

Section 15.5 (precluding assignments) and 15.6 (precluding third-party beneficiaries). *See* Motion to Transfer at pp. 3 and 11. *However, the term "Affiliate" appears nowhere in the forum selection clauses of either the LLC Agreement or the DSA.* *See* LLC Agreement at Section 15.7; DSA at Section 9.4. Rather, those clauses confer rights on only "Parties." *See* LLC Agreement at Section 15.7; DSA at Section 9.4. Further, neither the LLC Agreement nor the DSA specifically contemplated that the signatories would be engaged in business with a parent entity such as Express Scripts. In fact, the Court in *E.I. DuPont*, specifically distinguished Coastal Steel on these grounds while declining to enforce a forum selection clause against a non-signatory. *E.I. DuPont, supra* at 197.

Therefore, Defendants cannot invoke the forum selection clauses contained in the LLC Agreement or the DSA.[6]

---

[6] Even if Defendants could enforce the forum selection clauses of the LLC Agreement and the DSA, which they cannot, those clauses do not apply to Plaintiffs' claims. The Third Circuit has specified that "a third party beneficiary will *only* be bound by the terms of the underlying contract where the claims asserted by that beneficiary arise from its third party beneficiary status." *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates*, 269 F.3d 187, 197 (3d Cir. 2001) (emphasis in original). Therefore, even if the claims are related to the underlying agreement, they may not relate to the rights and obligations arising from the non-signatory's third party beneficiary status; and the forum selection clause is inapplicable. *Id.* Here, Defendants fail to identify <u>any</u> rights or obligations related to their alleged third party beneficiary status. Accordingly, the LLC Agreement's forum selection clause cannot apply here.

Although Defendants do not have any third party beneficiary status under either the LLC Agreement or the DSA, none of Plaintiff's claims arise from any such status Defendants may argue applies. Plaintiffs' claims arise solely from Defendants' retention of unearned sums and interference with Plaintiffs' contractual relations. *See also Neill v. Laifer*, 1996 WL 460076, *2 (E.D. Pa., Aug. 9, 1996) (arbitration clause governing wrongful termination claims not enforced where an action for intentional interference with contractual relations claims was totally independent).

**B.      Defendants Cannot Otherwise Meet Their Burden Under 28 U.S.C. §1404 To Deprive Plaintiffs Of Their Chosen Forum.**

"Although Section 1404(a) gives the district courts discretion to decide a motion to transfer based on an individualized, case-by-case consideration of convenience and fairness, such motions are not to be liberally granted." *Endless Pools, Inc. v. Wave Tec Pools, Inc.*, 362 F.Supp.2d 578, 586 (E.D. Pa. 2005). "Transfer under 28 U.S.C. §1404(a) is not designed to simply flip the burden of an inconvenient forum from the defendant to the plaintiff. Section 1404(a) provides for a transfer to a more convenient forum, **not to a forum likely to prove equally convenient or inconvenient.**" *Rightime Econometrics, Inc. v. Ashworth*, 1995 WL 613093,*4 (E.D. Pa., Oct. 18, 1995) (emphasis added).

"The movant has the burden of demonstrating that a transfer is warranted." *Labrot v. John Elway Chrysler Jeep on Broadway*, 436 F.Supp.2d 729, 730 (E.D. Pa. 2006). "Unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail. Moreover, courts have required defendants moving for transfer to prove *'with particularity'* the inconvenience caused by the plaintiff's choice of forum." *Rightime Econometrics* at *1 (emphasis in original).

As the Court explained in *Morris Black & Sons*:

> In ruling on a motion to transfer, the court must balance a variety of private and public interests protected by the language of § 1404(a). The private interests include: (1) the plaintiff's forum preference; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses, but only to the extent that the witnesses may only be unavailable for trial in one of the fora; and (6) the location of books and records to the extent that the files could not be produced in the alternative forum. The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public

policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Morris Black & Sons v. Zitone Costr. And Supply Co., Inc.*, 2004 WL 2223310, *2 (E.D. Pa., Oct. 1, 2004); *see also United States v. Brown Univ. in Providence*, 772 F.Supp. 241, 242-243 (E.D. Pa. 1991).[7]

1.   **Defendants Have Failed to Demonstrate that Any "Private Interests" Favor Transfer**

"In the Third Circuit, a plaintiff's choice of forum is a paramount concern in deciding a motion to transfer venue and should not be lightly disturbed.  In particular, when a plaintiff chooses his home forum the choice is entitled to great deference." *Endless Pools*, *supra* at 586. "A plaintiff should not be deprived of the advantages presumed to come from that choice of forum unless the defendant clearly adduces facts that either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems." *Rightime Econometrics*, at *1.

Plaintiffs have chosen the Eastern District of Pennsylvania to commence this action. Notably, Aetna is a Pennsylvania Corporation with a principal place of business in Blue Bell, Pennsylvania.  ASP is headquartered in Blue Bell, Pennsylvania.  This District is Aetna's and ASP's home forum.  Complaint at ¶¶4 and 5.  Consequently, that choice is entitled to great deference. *Endless Pools*, at 586.

---

[7] Significantly, even if Defendants could enforce the forum selection clauses of the LLC Agreement and the DSA, which they cannot, those clauses would be given diminished weight in the Court's §1404(a) analysis because Plaintiffs' claims sound in tort, not contract.  *Wild v. Jungle Media Group*, 2004 WL 834695, *8 (E.D. Pa., March 17, 2004) ("Because plaintiff's remaining claim is in tort and the essence of his entire amended complaint sounds in tort, not contract, I find that the forum selection clause has limited force, and, as will be seen, that force is outweighed to the extent that I consider it in conjunction with the *Jumara* factors.").

14

The only "interests" that Defendants claim favor transfer, in fact, do not favor transfer at all. Specifically, Defendants claim that "Plaintiffs and ESI are large corporations that have the financial resources to litigate this matter equally in Delaware or in Pennsylvania." *See* Motion to Transfer at p. 13. However, the parties' financial ability to litigate this matter *equally* in both Pennsylvania and Delaware does not establish anything that would make transfer to Delaware more convenient, let alone demonstrate any oppressiveness or vexation of litigating in this Court.

Defendants claim that "[w]itnesses from ESI or Priority could not be required to attend trial in either Pennsylvania or Delaware." *See* Motion to Transfer at p. 13. Again, taking this statement as true, Defendants essentially admit that transfer to Delaware *would not be any more or less convenient for witnesses or make compelling the appearance of witnesses any easier than in Pennsylvania*. In any event, courts in this District have determined that the distance between Philadelphia and federal courts as far away as New York, let alone Delaware, are close enough that travel between the two points cannot be considered an inconvenience. *Neill v. Laifer*, 1996 WL 460076, *2 (E.D. Pa., Aug. 9, 1996).

Finally, Defendants claim that "[w]hile the books and records of Aetna may be located in Pennsylvania, the books and records of ASP and Priority are located in Florida, while those of ESI are located in Missouri." *See* Motion to Transfer at p. 13. It first bears noting that Defendants admit that Aetna's books and records are located in this District. Moreover, even assuming that ASP's books and records are located in Florida, ASP is headquartered in this District. Complaint at ¶5. The most significant flaw in Defendants' argument, however, is that even if books and records that may be relevant to these proceedings are located in Florida and Missouri, as Defendants allege, *Defendants do not seek to transfer this action to either Florida or Missouri*. Rather, Defendants seek to transfer this action to the District Court of Delaware.

At best, Defendants have argued that transfer to the District of Delaware would make litigating this matter equally convenient or inconvenient for the parties as litigating in this Court. This showing fails to satisfy Defendants' high burden to trump a plaintiff's choice of forum. *Rightime Econometrics, Inc., supra.* In any event, Defendants have failed to provide any detailed showing of such alleged inconvenience. "[T]his Court has not been furnished with the names of witnesses to be called or the substance of their testimony or a showing of the materiality of such alleged evidence, nor any other matters which could assist the Court in making a rational determination before transferring the action, thereby depriving the Plaintiff of its choice of forum." *Follansbee Metals Co., Inc. v. John T. Clark and Son of New Hampshire, Inc.*, 387 F.Supp. 574, 581-582 (W.D. Pa. 1974).

Accordingly, Defendants have failed to set forth any "private" interests that would satisfy their burden of overcoming Plaintiffs' choice of their home forum.

2.    **Defendants Have Failed to Demonstrate that Any "Public Interests" Favor Transfer.**

In their analysis of the "public interests," Defendants again only allege that Delaware would, at best, be equally convenient or inconvenient than litigating the matter in this District.

Defendants first argue that the Complaint "involves simple contract and tort claims that can be resolved *just as easily* in federal court in Delaware." *See* Motion to Remand at p. 14 (emphasis added). Obviously, this argument fails to establish that transfer would not simply shift the convenience of litigating this matter from one party to another. *Rightime Econometrics* at *4. In fact, Defendants essentially argue that the convenience of adjudicating "simple contract and tort claims" would not shift at all.

Next, Defendants argue that "Delaware has a substantial interest in deciding this matter because it involves the alleged contractual and fiduciary duties owed by Priority to ASP - a

Delaware LLC." *See* Motion to Remand at p. 14. However, as set forth in Plaintiffs' Complaint, ASP is headquartered in this District in Blue Bell, Pennsylvania. *See* Complaint at ¶5. Accordingly, Pennsylvania has an equally substantial, if not greater, interest in deciding this matter.

Finally, citing the choice of law provisions of the Agreements, Defendants argue that "both the LLC Agreement and the DSA provide that the agreements will be construed in accordance with the internal laws of Delaware." *See* Defendants' 2/29/08 Motion to Transfer at p. 14. However, as discussed at length above, Defendants as non-signatories cannot benefit from or enforce the forum selection provisions of the Agreements. Moreover, in a footnote immediately following the above-quoted sentence, Defendants concede that, even if they could enforce the choice of law provisions, those limited provisions do not apply to Plaintiffs' tortious and fiduciary claims against Defendants. *See* Motion to Remand at p. 14 n.7.

Accordingly, Defendants have failed to set forth any "public" interests that would satisfy their burden of overcoming Plaintiffs' choice of their home forum.

17

IV.    **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendants'

Motion to Transfer and grant Plaintiffs all further relief that the Court deems appropriate.

Respectfully submitted,


OF COUNSEL:                          /s/ James C. Crumlish
ELLIOTT GREENLEAF&                   JOHN M. ELLIOTT
      SIEDZIKOWSKI, P.C.             JAMES C. CRUMLISH, III
                                     FREDERICK P. SANTARELLI
                                     JOHN P. ELLIOTT
                                     Union Meeting Corporate Ctr. V
                                     925 Harvest Drive
                                     Blue Bell, PA  19422
                                     (215) 977-1000

                                     Counsel for Plaintiffs
                                     Aetna Inc., Aetna Specialty Pharmacy, LLC.,
                                     and Aetna Health Holdings, LLC

DATED:    March 28, 2008

18

## CERTIFICATION OF SERVICE

 I James C. Crumlish, III, Esq., hereby certify that a true and accurate copy of the foregoing was on this date served on the following person(s) through the Court's electronic filing system:

Robert V. Dell'Osa, Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

Joseph P. Conran, Esq. (pro hac vice)
Christopher J. Valeriote, Esq. (pro hac vice)
Omri E. Praiss (pro hac vice)
Husch & Eppenberger, LLC
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105-1530

Date: March 28, 2008        /s/ James C. Crumlish, III
                JAMES C. CRUMLISH, III

EXHIBIT "4"

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AETNA INC.,** *et al.* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **NO. 07-5541** |
| **EXPRESS SCRIPTS,** *et al.* | : | |

<u>**SCHEDULING ORDER**</u>

     **AND NOW**, this 7th day of April, 2008, following a preliminary pretrial conference, it is **ORDERED** as follows:

     1.     All motions to amend the complaint and to join or add additional parties shall be filed within fourteen (14) days of the date of this Order.

     2.     All fact discovery shall be completed by **October 3, 2008**.

     3.     Counsel for each party shall serve upon counsel for every other party the information referred to in Federal Rule of Civil Procedure 26(a)(2)(B) by expert report or answer to expert interrogatory no later than **November 7, 2008**. If the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party, counsel shall serve the information on counsel for every other party no later than **November 21, 2008**. Expert depositions, if any, shall be concluded no later than **December 5, 2008**.

     4.     Any party expecting to offer opinion testimony from lay witnesses pursuant to Federal Rule of Evidence 701 with respect to the issues of liability and damages shall, within the time required for submission of information and/or reports for expert witnesses on liability and damages set forth in the preceding paragraph, serve opposing parties with concise details and/or documents covering the lay opinions of the Rule 701 witnesses, including the identity of each witness offering the expert opinion, the substance and the

basis for each opinion.

5.      Counsel for the parties are directed to contact Magistrate Judge L. Felipe Restrepo's chambers on or before **September 5, 2008**, to schedule a settlement conference.

6.      All motions for summary judgment and *Daubert* Motions, if any, shall be filed no later than **January 9, 2009**, and responses to any such motions shall be filed within fourteen (14) days.  Motions for summary judgment and responses shall be filed in the form prescribed in the Court's Notice to Counsel and Judge Savage's Scheduling and Motion Policies and Procedures, specifically:

(a)      The movant shall file, in support of the motion for summary judgment, a Statement of Undisputed Facts which sets forth, in numbered paragraphs, all material facts which the movant contends are undisputed;

(b)      The respondent shall file, in opposition to the motion for summary judgment, a separate Statement of Disputed Facts, responding to the numbered paragraphs set forth in the movant's Statement of Undisputed Facts, which the respondent contend present a genuine issue to be tried. The respondent shall also set forth, in separate numbered paragraphs, any additional facts which the respondent contends preclude summary judgment.

(c)      All material facts set forth in the Statement of Undisputed Facts required to be  served by the movant shall be admitted unless controverted by the opposing party.

(d)      Statements of material facts in support of or in opposition to a motion for summary judgment shall include specific and not general references to the parts of the

record which support each of the statements. Each stated fact and each statement that a

material fact is disputed shall cite the source relied upon, including the title, page and line

of the document supporting the statement.

Failure of the movant to follow this procedure in all respects will result in the

denial of the motion.  Respondent's failure to comply will result in the Court's considering

the motion as uncontested.

7.    On or before **January 23, 2009**, counsel for each party shall serve upon

counsel for every other party:

(a)    a copy of each exhibit the party expects to offer at trial, together with

an index of all trial exhibits marked with consecutive numbers;

(b)    the curriculum vitae for each expert witness expected to testify;

(c)    proposed stipulations; and

(c)    a specific designation of each discovery item expected to be offered

into evidence.

8.    No later than **February 6, 2009**, the parties shall file with the Clerk of Court

their pretrial memoranda.  Each party's pretrial memorandum shall include the following

information:

(a)    a detailed factual summary of the party's contentions;

(b)    the identity of each fact witness, liability and damages, to be called at

trial with a statement of the nature of the expected testimony (witnesses not listed may not

be called by that party in its case-in-chief);

(c)    the identity of each expert witness to be called at trial with a concise

statement of each opinion to be offered by the expert;

(d)    a curriculum vitae for each expert witness;

(e)    designation of videotaped trial testimony;

(f)    designation of deposition testimony to be offered at trial specifying witness, pages and line numbers;

(g)    a list of each item of monetary damages claimed, including, as appropriate, computations of lost earnings and loss of future earning capacity, medical expenses, property damage, and any other economic loss; or, if relief other than monetary damages is sought, information adequate for framing an order granting the relief sought;

(h)    stipulations, if any;

(i)    objections to and the grounds for the objections to the admissibility of any item of evidence expected to be offered by another party; and,

(j)    a statement of any anticipated legal issues on which the Court will be required to rule.

9.    All motions in limine shall be filed with the Clerk of the Court and a copy shall be delivered to the Court no later than **February 20, 2009**.  Responses, if any, shall be filed within five (5) days.

10.    No later than **February 27, 2009**, the parties shall file in writing with the Clerk of Court joint proposed jury instructions on substantive issues and proposed verdict forms or special interrogatories to the jury.  Each party also shall file proposed jury instructions, verdict forms or special interrogatories on those issues not agreed upon by the parties in their joint submission. Jury instructions shall be submitted each on a separate sheet of paper, double spaced, with accurate quotes from and citations to cases and pattern jury instructions where appropriate. The parties shall also provide to the Court at Chambers

proposed jury instructions on a computer diskette in WordPerfect 9.0 for Windows format.

11.    Prior to the final pretrial conference, counsel shall confer regarding stipulations and exhibits.  Counsel shall resolve, if possible, objections to exhibits and witnesses.  Failure to confer shall result in the imposition of sanctions.

12.    A final pretrial conference will be held on **March 3, 2009 at 10:00 a.m. in Chambers (Room 9614)**.

13.    At the final pretrial conference, the parties shall provide the Court  with one copy of each exhibit and three  copies of a schedule of exhibits which shall briefly describe each exhibit.  At the commencement of trial, the parties shall provide the Court with two copies of each exhibit.  Exhibits shall be arranged and tabbed in a ring binder.

14.    At the final pretrial conference, counsel shall be prepared to argue pending motions in limine, and objections to witnesses and exhibits.  Counsel shall be prepared to state their objections to witnesses and exhibits, and to respond to opposing counsel's objections. It is expected that counsel will have complied with the requirement to confer regarding witnesses and exhibits set forth in paragraph 11, leaving for the Court only those objections the parties could not resolve.

15.    Only those exhibits, discovery items and expert witnesses identified in the manner set forth in this Order shall be considered for admission into evidence at trial, unless stipulated to by all affected parties and approved by the Court, or by Order of Court so as to avoid manifest injustice.

16.    No later than **February 20, 2009**, any party objecting to deposition testimony shall file the objections, setting forth the page and line numbers of the challenged testimony and a clear statement for the basis of the objection. The objecting party must

provide the Court with a copy of the portions of the deposition transcript with the challenged testimony highlighted. Failure to comply with these requirements shall constitute a waiver of all objections.

17.    This case will be listed for trial on **March 12, 2009 at 9:00 a.m. in Courtroom 9A**. Counsel and all parties shall be prepared to commence trial on that date. All counsel are **attached** for trial.

18.    If a witness may be unavailable at the time of trial in the manner defined in Federal Rule of Civil Procedure 32(a)(3), the Court expects use of oral or videotape depositions at trial of any witness whose testimony a party believes essential to the presentation of that party's case, whether that witness is a party, a non-party or an expert. The unavailability of any such witness will not be a ground to delay the commencement or progress of an ongoing trial. In the event a deposition is to be offered, the offering party shall file with the Court, no later than ten (10) business days prior to the commencement of the trial, a copy of the deposition, but only after all efforts have been made to resolve objections with other counsel. Unresolved objections shall be presented in the manner prescribed in paragraph 16.

/s/ Timothy J. Savage
TIMOTHY J. SAVAGE,  J.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon the persons and

in the manner indicated below:

### **Via Electronic Filing and Service**

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Potter Anderson & Corroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiff*
*Priority Healthcare Corporation*

Dated: April 14, 2008            */s/ William M. Kelleher*
                        William M. Kelleher (I.D. No. 3961)