IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRIORITY HEALTHCARE CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 08-148-JJF |
| v. | ) |
| | ) |
| AETNA SPECIALITY PHARMACY, LLC, and | ) |
| AETNA HEALTH HOLDINGS, LLC, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
COMPLAINT FOR DECLARATORY JUDGMENT**

OF COUNSEL:

Joseph P. Conran
Christopher J. Valeriote
Omri E. Praiss
Christopher A. Smith
HUSCH BLACKWELL SANDERS LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105-1530
Tel: (314) 480-1500

Dated: April 25, 2008
861626 / 32814

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys For Plaintiff
Priority Healthcare Corporation*

# TABLE OF CONTENTS

I. NATURE AND STAGE OF PROCEEDINGS ...................................................................1

II. SUMMARY OF ARGUMENT .........................................................................................1

III. ARGUMENT......................................................................................................................2

    A. Standard for Review ..............................................................................................2

    B. Priority's Complaint Satisfies the Case or Controversy Requirement....................2

    C. Priority's Claims are Ripe for Adjudication ..........................................................6

    D. The Court Should Exercise its Discretion and Resolve This Dispute ...................8

IV. CONCLUSION.................................................................................................................11

## TABLE OF AUTHORITIES

**CASES**

Page(s)

*APV N. America v. SIG Simonazzi N. America, Inc.*,
295 F. Supp. 2d 393 (D. Del. 2002) ........................................................................................ 10

*Coastal Steel Corp. v. Tilghman Wheelbrator Ltd.*,
709 F.2d 190 (3d Cir. 1983) .................................................................................................... 10

*Cordance Corp. v. Amazon.com, Inc.*,
521 F. Supp. 2d 340 (D. Del. 2007) ........................................................................................ 6

*Echostar Satellite LLC v. Finisar Corp.*,
515 F. Supp. 2d 447 (D. Del. 2007) ..................................................................................... 5, 9

*Household Int'l, Inc. v. Westchester Fire Ins. Co.*,
286 F. Supp. 2d 369 (D. Del. 2003) ........................................................................................ 6

*Jordan v. SEI Corp.*,
No. 96-1616, 1996 WL 296540 (E.D. Pa. Jun. 4, 1996) ........................................................ 10

*Medimmune, Inc. v. Genetech, Inc.*,
166 L. Ed. 2d 604 (2007) .................................................................................................. Passim

*NE Hub Partners, L.P. v. CNG Transmission Corp.*,
239 F.3d 333 (3d Cir. 2001) .................................................................................................. 7, 8

*Samsung Electronics Co., Ltd. v. On Semiconductor Corp.*,
-- F. Supp. 2d --, 2008 WL 900979 (Apr. 3, 2008) ......................................................... 2, 5, 9

*Surrick v. Killon*,
449 F.3d 520 (3d Cir. 2006) .................................................................................................. 7, 8

**STATUTES, RULES & REGULATIONS**

28 U.S.C. § 2201 ............................................................................................................................ 1

Fed. R. Civ. P. 12(b)(1) .................................................................................................................. 2

Fed. R. Civ. P. 57 ........................................................................................................................... 1

Plaintiff, Priority Healthcare Corporation ("Priority"), respectfully submits this brief in opposition to Defendants' motion to dismiss Priority's Complaint for declaratory judgment.

## I.     NATURE AND STAGE OF PROCEEDINGS

Priority filed its Complaint on March 13, 2008 (D.I. 1) seeking a declaratory judgment in accordance with Fed. R. Civ. P. 57 and 28 U.S.C. § 2201. On April 14, 2008, Defendants, Aetna Specialty Pharmacy, LLC and Aetna Health Holdings, LLC (collectively, "Defendants") filed their Motion to Dismiss the Complaint (D.I. 7).

## II.    SUMMARY OF ARGUMENT

The Court should deny Defendants' Motion because the Court has subject-matter jurisdiction over this action. The Complaint demonstrates that there is an actual controversy between the parties with respect to their rights and obligations under the contract at issue – the Drug Supply Agreement (the "DSA"). To be sure, the Complaint demonstrates that the parties, through their respective in-house counsel, have taken fundamentally different positions with respect to whether the DSA has been terminated and whether the Defendants have the right to audit certain of Priority's financial books and records. Thus, the factual and legal dimensions of the dispute are well defined and nothing about the dispute renders it unfit for judicial resolution.

Moreover, Priority seeks a declaratory judgment in order to clarify and settle the legal relations at issue and eliminate and/or mitigate any possible adverse consequences (i.e., claims for money damages by Defendants) that may arise as a result of Priority's position that the DSA has been terminated and that Defendants are not entitled to audit certain books and records. The controversy between the parties is ripe for determination as the parties have adverse legal interests (Priority believes the DSA is terminated and Defendants believe that the DSA remains in effect for at least another year); the facts and terms of the DSA are sufficiently defined as to

allow for a conclusive legal judgment; and the judgment will be useful to the parties and provide relief from uncertainties which presently exist.

Finally, the DSA contains a mandatory venue selection clause which required this action to be filed in the federal or state courts of Delaware, and contrary to Defendants' assertions Priority has not failed to comply with any contractual dispute resolution provisions.

### III. ARGUMENT

#### A. Standard for Review

The relevant standard of review governing Defendants' Motion was recently summarized by this Court in *Samsung Electronics Co., Ltd. v. On Semiconductor Corp.*, -- F. Supp. 2d --, 2008 WL 900979, * 3 (Apr. 3, 2008). In relevant part, the Court noted that in reviewing a "facial challenge" under Rule 12(b)(1), the Court "must accept all factual allegations in the Complaint as true." *Id.* However, in reviewing a "factual challenge" to the Court's subject-matter jurisdiction, the Court "is not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations in the complaint." *Id.*

In this case, Defendants' motion appears to be a "facial challenge" under Rule 12(b)(1). *See* Br. at 3 ("The facts pleaded in the Complaint are as follow...."). Regardless, under either standard, the Court should deny Defendants' Motion for the reasons set forth herein.

#### B. Priority's Complaint Satisfies the Case or Controversy Requirement

Defendants argue that "no actual case or controversy exists." Br. at 6-8. In so doing, Defendants cite to, but fail to discuss, the Supreme Court's recent decision in *Medimmune, Inc. v. Genetech, Inc.*, 166 L. Ed. 2d 604 (2007). This omission is not surprising, since *Medimmune* directly refutes Defendants' position.

In *Medimmune*, the plaintiff entered into a license agreement with the defendant. *Id.* at 611. Subsequently, the defendant sent plaintiff "a letter expressing its belief" that a certain drug

2

was covered under its patent and, therefore, the plaintiff would have to begin paying royalties under the license agreement for this drug. *Id.* Plaintiff disagreed with this claim. *Id.* Nevertheless, the plaintiff "considered the letter to be clear threat" because the defendant could sue plaintiff and potentially recover substantial damages if it turned out that plaintiff improperly refused to make the royalty payments as requested. *Id.* Unwilling to take such risk, the plaintiff paid the royalty payments under protest, reserving all of its rights. *Id.* at 612. At the same time, the plaintiff filed a declaratory judgment action with respect to its "contractual rights and obligations" under the license agreement. *Id.*

The district court dismissed the lawsuit for lack of subject-matter jurisdiction. *Id.* On appeal, however, the Supreme Court reversed. In so doing, the Court set forth the following relevant standards:

> The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.' 28 U.S.C. § 2201(a)....
>
> Our decisions have required that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' **'Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'**

166 L. Ed. 2d at 614-15 (citations omitted) (alteration in original) (emphasis added).

Applying these standards, the Court held that "[t]here is no dispute that these standards would have been satisfied if [plaintiff] had taken the final step of refusing to make royalty payments under the 1997 license agreement." *Id.* at 615. In particular, the Court emphasized that "[t]he factual and legal dimensions of the dispute are well defined and, but for petitioner's continuing to make royalty payments, nothing about the dispute would render it unfit for judicial

3

resolution." *Id.* Finally, the Court held that the plaintiff "was not required, insofar as Article III is concerned, to break or terminate its license agreement before seeking declaratory judgment in federal court." *Id.* at 621.

The facts in this case, which are more compelling, dictate the same conclusion for several reasons.

- **First**, similar to the parties in *Medimmune*, prior to the filing of this lawsuit, the respective in-house attorneys for Priority and Defendants exchanged several letters that set forth the parties' fundamentally different positions concerning their rights and obligations under the DSA. *See* Compl. at Exs. A-E; G-J.

- **Second**, as in *Medimmune*, Defendants' letters represented a "clear threat" to Priority. For example, Defendants stated: "In light of Priority's express refusal to comply with its contractual obligations and due to the likelihood that disputes relating to Priority's breaches of its agreements with ASP and Aetna Health will be resolved in adversarial proceedings...." *See* Compl. at Ex. D.

- **Third**, while the plaintiff in *Medimmune* continued to make royalty payments in protest, pursuant to Sections 7.1 and 7.2.4 of the DSA, Priority went ahead and terminated the DSA and is no longer providing Defendants with any drugs pursuant to the terms of the DSA. In addition, pursuant to Section 4.1 of the DSA, Priority has refused to provide Defendants with access to any books or records of Priority with respect to Specialty Drugs that Defendants did not purchase under the DSA -- either directly from Priority or from drug manufacturers pursuant to the terms and conditions of agreements between Priority and drug manufacturers.

4

As a result, the Supreme Court's conclusion in *Medimmune* is directly on point, since "[t]he factual and legal dimensions of [this] dispute are well defined and ... [there is] nothing about the dispute that would render it unfit for judicial resolution." *Id.* at 615.

Defendants' arguments to the contrary lack merit. First, Defendants claim that the allegations in the Complaint merely reflect that "the parties are in the midst of discussing their respective views of certain contractual matters between them and exchanging letters." Br. at 8. Even a cursory review of the letters attached to the Complaint proves otherwise. Specifically, the letters reflect that after extensive discussions, the parties had reached fundamentally *different* positions concerning their rights and obligations under the DSA that would likely have to be resolved in litigation. *See* Compl. at Exs. A-E; G-J. Similar threatening letters were sufficient to confer jurisdiction in *Medimmune*, and the same holds true here.

In fact, in *Echostar Satellite LLC v. Finisar Corp.*, 515 F. Supp. 2d 447 (D. Del. 2007), this Court emphasized that the case or controversy requirement is satisfied "in circumstances where the party seeking declaratory judgment has reason to believe that further negotiations will be fruitless." *Id.* at 451. *See also Samsung Electronics*, 2008 WL 900979 at * 4 (holding that letters exchanged by parties prior to filing of lawsuit that set forth their disagreement "warrant[ed] a finding of an actual controversy between the parties"). Likewise, the letters exchanged between the parties in this case demonstrate that this standard had been met since any further negotiations would have been fruitless.

Second, Defendants claim that Priority fails to plead any "adverse consequence." Br. at 8. This argument ignores reality. Priority filed its declaratory judgment precisely for this reason: to eliminate and/or mitigate any possible adverse consequences. Specifically, Priority asks this Court to resolve a present dispute between the parties by declaring their rights and

5

obligations under the DSA. Such a declaration is necessary to eliminate and/or mitigate any possible claims for damages by Defendants that Priority has allegedly improperly terminated the DSA or improperly failed to provide Defendants with access to certain books and records. A similar risk was sufficient to confer jurisdiction in *Medimmune*, and, once again, the same holds true here.

Thus, this Court has subject-matter jurisdiction over this action because there is a substantial controversy between the parties with respect to their rights and obligations under the DSA, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *See, e.g., Cordance Corp. v. Amazon.com, Inc.*, 521 F. Supp. 2d 340, 345 (D. Del. 2007) (denying motion to dismiss because a "declaratory judgment action is appropriate when '(1) the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.') (citations omitted); *Household Int'l, Inc. v. Westchester Fire Ins. Co.*, 286 F. Supp. 2d 369, 376 (D. Del. 2003) (denying motion to dismiss because "declaratory relief is available to plaintiff ... where it seeks to define its rights and obligations regarding one of its customers").

### C. Priority's Claims are Ripe for Adjudication

In the alternative, Defendants argue that Priority's claims "are not ripe and are premature." Br. at 8-10. This argument also ignores applicable law and misses the mark. The Third Circuit has set forth a three-part test to determine whether a declaratory judgment action is ripe:

> (1) the parties must have adverse legal interests; (2) the facts must be sufficiently concrete to allow for a conclusive legal judgment; and (3) the judgment must be useful to the parties.

6

*Surrick v. Killon*, 449 F.3d 520, 527 (3d Cir. 2006). *See also NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 342 (3d Cir. 2001) (same). Priority readily satisfies each of these factors.

**First, the parties to this litigation have adverse legal interests.** In evaluating this factor, courts look to "[w]hether the claim involves uncertain and contingent events, or presents a real and substantial threat of harm." *Surrick*, 449 F.3d at 527. Moreover, "[i]t is not necessary for the party seeking review to have suffered a completed harm in order to establish adversity of interest so long as there is a substantial threat of real harm that remains throughout the course of the litigation." *Id.*

Priority satisfies this factor. The issues presented in Priority's Complaint do not involve any uncertain or contingent events. To the contrary, the issues arise out of a real and fundamental disagreement by the parties concerning their *current* rights and obligations under the DSA. In fact, the issues relate to whether actions that Priority has *already* taken (terminating the DSA and no longer providing Defendants with any drugs pursuant to the terms of the DSA or refusing to provide Defendants with access to various books or records of Priority) were appropriate. Since these actions have already taken place, the claims do not implicate any uncertain or contingent events.

**Second, the facts are sufficiently concrete to allow for a conclusive legal judgment.** In evaluating this factor, courts recognize that "[c]onclusiveness is a short-hand term for whether a declaratory judgment definitively would decide the parties' rights. It also addresses the extent to which further factual development of the case would facilitate decision, so as to avoid issuing advisory opinions, or whether the question presented is predominately legal." *NE Hub Partners*, 239 F.3d at 344 (citations omitted).

7

Priority satisfies this factor as well. It is beyond dispute that a declaratory judgment ruling by this Court would eliminate the parties' uncertainty and disagreement with respect to their rights and obligations under the DSA by resolving these issues. In addition, the issues presented in this case are predominately legal – requiring the Court to interpret the applicable contract provisions and set forth the parties' rights and obligations under those provisions. As a result, the facts presented in Priority's Complaint are sufficiently concrete to allow for a conclusive legal judgment.

**Third, a judgment would be extremely useful to the parties.** The "utility" factor "goes to 'whether the parties' plans or actions are likely to be affected by a declaratory judgment,' and considers the hardship to the parties of withholding judgment." *NE Hub Partners*, 239 F.3d at 344-45 (citations omitted). Again, Priority satisfies this factor. Indeed, a declaratory judgment will have a direct and immediate impact on the parties' ongoing course of conduct under the DSA. At the same time, a declaratory judgment will serve to eliminate and/or mitigate any possible adverse consequences. *See Surrick*, 449 F.3d at 529 ("A grant or denial of relief would therefore materially affect that purpose of the Declaratory Judgment Act – 'clarify[ing] legal relationships so that plaintiffs ... [can] make responsible decisions about the future.'" (citations omitted) (alterations in original).

Thus, the claims in Priority's Complaint are ripe for adjudication.

**D.     The Court Should Exercise its Discretion and Resolve This Dispute**

Defendants argue in the alternative that the Court should exercise its discretion and dismiss the case. There is no legal or factual basis to support such action.

This Court has consistently recognized that that where "there is an actual controversy and a declaratory judgment would settle the dispute, the declaratory judgment is typically not subject

8

to dismissal." *Echostar Satellite*, 515 F. Supp. 2d at 452. *See also Samsung Electronics*, 2008 WL 900979 at *5 ("in the usual circumstance the declaratory judgment is not subject to dismissal" where there is an actual controversy and a declaratory judgment would settle the legal relations and afford relief from uncertainty). Simply put, there is nothing unusual about this case that warrants dismissal.

First, Defendants argue that that the Court should not exercise jurisdiction because Priority has allegedly engaged in improper forum shopping. This claim is highly disingenuous, to say the least, and Defendants have waived any defenses based upon venue in this Court. As noted in paragraph 4 of the Complaint, pursuant to Section 9.4 of the DSA, venue is *mandatory* in this District because the parties agreed as follows:

> The Parties [referring to Priority and Defendants] consent and submit to the jurisdiction of the federal and/or state courts of the state [of] Delaware and **any action concerning this Agreement or related matters shall only be brought in the State of Delaware**. The Parties acknowledge and agree that they shall not raise in connection therewith, and hereby waive, any defenses based upon venue, inconvenience of forum or lack of personal jurisdiction **in any action or suit brought in accordance with the foregoing**. The Parties acknowledge that they have read and understand this clause and agree willingly to its terms.

DSA at ¶ 9.4 (emphasis added). Thus, it is beyond dispute that Priority did <u>not</u> engage in forum shopping by filing this lawsuit consistent with the clear and unambiguous language in the mandatory forum selection clause in the DSA.

Moreover, Defendants (not Priority) have engaged in improper forum shopping. Specifically, Defendants improperly filed a lawsuit in the United States District Court for the Eastern District of Pennsylvania (the "Philadelphia Litigation"), despite the fact that their claims directly arise out of and relate to the DSA, including Priority's alleged breach of various provisions of the DSA. *See* Compl. at Ex. F. In an attempt to avoid the DSA's mandatory forum selection clause, Defendants filed the Philadelphia Litigation solely against Priority's parent

9

companies – Express Scripts, Inc, and CuraScript, Inc. (collectively, "ESI"). Under applicable law, however, ESI has the right to enforce the forum selection clause in the DSA. *See, e.g., Coastal Steel Corp. v. Tilghman Wheelbrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983); *Jordan v. SEI Corp.*, 1996 WL 296540, at * 7-8 (E.D. Pa. Jun. 4, 1996). ESI relied on the foregoing authorities in support of its motion to transfer, which is still pending before the Court in the Philadelphia Litigation.

Second, Defendants argue that the Court should exercise its discretion and dismiss this declaratory judgment action based on principles of comity. In support, Defendants once again rely on the pending Philadelphia Litigation which they improperly filed in Philadelphia and not in this Court. As a result, this argument lacks merit for the same reasons stated above: Defendants should not benefit from having improperly engaged in forum shopping by filing the Philadelphia Litigation contrary to the express terms of the mandatory forum selection clause in the DSA. Moreover, consistent with this Court's holding in *APV N. America v. SIG Simonazzi N. America, Inc.*, 295 F. Supp. 2d 393, 396-98 (D. Del. 2002), principles of comity do not apply in this case because the first-filed rule is inapplicable, since the parties and claims brought in this case are <u>not</u> the same as those involved in the Philadelphia Litigation.

Finally, Defendants argue that the Court should not exercise jurisdiction because Priority has allegedly failed to comply with certain dispute resolution obligations prior to filing this action. This claim lacks merit for several reasons. As the letters attached to Priority's Complaint demonstrate, Priority repeatedly attempted to resolve this dispute in good faith with Defendants and any further discussions would have been to no avail; they would have been futile. Moreover, Defendants have failed to present any factual support for this assertion. It is Priority's position

that the DSA does not "incorporate a dispute resolution process" (Br. at 3) that has any application in this case.

Thus, the Court should exercise its discretion and resolve this dispute.

## IV. CONCLUSION

For these reasons, Plaintiff, Priority Healthcare Corporation, respectfully requests that the Court deny Defendants' motion to dismiss Priority's Complaint for declaratory judgment.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Joseph P. Conran
Christopher J. Valeriote
Omri E. Praiss
Christopher A. Smith
HUSCH BLACKWELL SANDERS LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105-1530
Tel: (314) 480-1500

Dated: April 25, 2008
861626 / 32814

By: /s/ David E. Moore
  Richard L. Horwitz (#2246)
  David E. Moore (#3983)
  1313 N. Market Street
  Hercules Plaza, 6th Floor
  Wilmington, DE 19801
  Tel: (302) 984-6000
  rhorwitz@potteranderson.com
  dmoore@potteranderson.com

*Attorneys For Plaintiff*
*Priority Healthcare Corporation*

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on April 25, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on April 25, 2008, the attached document was Electronically Mailed to the following person(s):

William M. Kelleher
Neil R. Lapinski
Elliott Greenleaf
1000 West Street, Suite 1440
Wilmington, DE 19801
wmk@elliottgreenleaf.com
nrl@elliottgreenleaf.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

861096 / 32814