IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **PRIORITY HEALTHCARE CORPORATION,** | :<br>:<br>: |
| Plaintiff, | :<br>: C.A. No. 08-00148-JJF |
| v. | :<br>: |
| **AETNA SPECIALTY PHARMACY, LLC and AETNA HEALTH HOLDINGS, LLC,** | :<br>:<br>: |
| Defendants. | :<br>: |

**REDACTED**
**REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR DECLARATORY JUDGMENT**

ELLIOTT GREENLEAF
& SIEDZIKOWSKI, P.C.

Date: May 5, 2008                    /s/ *William M. Kelleher*

William M. Kelleher (#3961)
Of Counsel:                          Neil R. Lapinski (#3645)
John M. Elliott                      1000 West Street
Frederick P. Santarelli              Suite 1440
James C. Crumlish, III               Wilmington, DE 19801
John P. Elliott                      Tel: (302) 384-9400, ext. 3
925 Harvest Drive                    wmk@elliottgreenleaf.com
Blue Bell, PA 19422                  nrl@elliottgreenleaf.com
Tel: (215) 977-1000
jme@elliottgreenleaf.com
fps@elliottgreenleaf.com             *Attorneys for Defendants,*
jcc@elliottgreenleaf.com             *Aetna Specialty Pharmacy, LLC*
jpe@elliottgreenleaf.com             *And Aetna Health Holdings, LLC*

EAW: 92400v1

# TABLE OF CONTENTS

                                                                                                **Page(s)**

I.     NATURE AND STATE OF PROCEEDINGS ...................................................................1

II.    SUMMARY OF ARGUMENT .........................................................................................1

III.   ARGUMENT .....................................................................................................................2

        A.     The Case or Controversy Is Not Ripe – *MedImmune* Does Not Support Plaintiff's Claim ......................................................................................................2

        B.     This Court Should Exercise Its Discretion to Decline Subject Matter Jurisdiction Because Prospects for Non-Judicial Resolution Remain ...............4

               (1)    The Court Should Dismiss This Action Because the Record Demonstrates Plaintiff Ended The Discussions Prematurely .................4

               (2)    The Court Should Dismiss This Action Because the Terms of the DSA Provide an Alternative Dispute Resolution Process With Which Plaintiff Has Utterly Disregarded ...............................................8

IV.   CONCLUSION ................................................................................................................11

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bausch & Lomb Inc. v. Alcide Corp.*,
684 F. Supp. 1155 (W.D.N.Y.1987) ......................................................................................7

*Columbia Pictures Indus., Inc. v. Schneider*,
435 F. Supp. 742 (D.C.N.Y. 1977) .......................................................................................6

*Davox Corp. v. Digital Sys. Int'l, Inc.*,
846 F. Supp 144 (D. Mass. 1993) .........................................................................................6

*EMC Corp. v. Norand Corp.*,
89 F.3d 807 (C.A.Fed. 1996) ............................................................................................5, 6

*MedImmune, Inc. v. Genentech, Inc.*,
127 S.Ct. 764 (2007) ....................................................................................................2, 4, 5

*NSI Corp. v. Showco, Inc.*,
843 F. Supp. 642 (D. Or. 1994) ............................................................................................7

*Wilton v. Seven Falls Co.*, 115 S. Ct. 2137 (1995) ...................................................................5

**FEDERAL STATUTES**

28 U.S.C. §2201 ....................................................................................................................1, 2

Defendants, Aetna Specialty Pharmacy, LLC ("ASP") and Aetna Health Holdings, LLC ("Aetna Health")(collectively, "Defendants"), respectfully submit this Reply to Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss Complaint for Declaratory Judgment (Docket Item 10)[1] filed by Priority Healthcare Corporation ("Plaintiff" or "Priority").

## I.   NATURE AND STATE OF PROCEEDINGS

Plaintiff commenced this action on March 13, 2008 seeking to invoke the Court's discretionary jurisdiction under the authority of the Declaratory Judgment Act, 28 U.S.C. §2201. D.I. 1. On April 14, 2008 Defendants filed a Motion to Dismiss (D.I. 7) and Brief in support thereof (D.I. 8). On April 25, 2008, Plaintiff filed a Brief in Opposition to Aetna Health's Motion to Dismiss. D.I. 10. Defendants herein Reply.

## II.   SUMMARY OF ARGUMENT

Defendants are compelled to reply to certain misleading and vague legal and factual arguments put forward by Plaintiff. First, Plaintiff misstates *MedImmune's* applicability to the instant action. Plaintiff asserts that Defendants' correspondence regarding the rights and obligations due under the parties' contract represents a "clear threat" to Priority in an effort to justify filing this premature action for declaratory relief. D.I. 10 at 4. However, the only thing these letters indicate is Defendants' willingness to proceed under the terms of the DSA and the detailed dispute resolution process governing the parties' contract.

Second, Plaintiff misunderstands the law when it claims there is no "legal or factual basis" to support a district court's exercise of discretion to dismiss a declaratory judgment action. *Id.* at 8. This Court has liberal discretion to decline exercising declaratory judgment jurisdiction, especially where, as here, prospects for non-judicial resolution remain and there are alternatives to clogging the courts with premature claims. Plaintiff's claims that it has "not failed to comply

---

[1] Hereinafter, Docket Items will be referred to as "D.I."

EAW: 92400v1

with any contractual dispute resolution process" (*Id.* at 2) and that the Drug Supply Agreement ("DSA") "does not incorporate a dispute resolution process" (*Id.* at 11) completely ignores this contract and its dispute resolution provisions.[2] On this ground alone, the Court should exercise its discretion to decline subject matter jurisdiction.

For all the above reasons and those set forth herein, this Court should grant Defendants' Motion to Dismiss Plaintiff's premature action for declaratory relief under the Declaratory Judgment Act.

### III. ARGUMENT

#### A. The Case or Controversy Is Not Ripe – *MedImmune* Does Not Support Plaintiff's Claim

Plaintiff misplaces reliance on *MedImmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764 (2007) for the conclusion that the parties' correspondence regarding ongoing requests and negotiations are sufficient to confer constitutional or statutory jurisdiction. *MedImmune* did not alter the principle that a substantial controversy between parties having adverse legal interests must be of "*sufficient immediacy and reality*" to warrant the issuance of a declaratory judgment." *Id.* at 771 (emphasis added). *MedImmune* is distinguishable in at least one respect that is fatal for Plaintiff. The defendants in *MedImmune* never contradicted the plaintiff's allegation that the defendants would likely file for preliminary injunction to enjoin plaintiff's sales if plaintiff ceased paying royalties on the patent at issue. *Id.* at 772.

On the other hand, Priority has filed this declaratory judgment action absent any threat of real or imminent litigation. Regardless of whether the parties may have different positions as to Priority's rights and obligations under the DSA, there is absolutely no basis to allege that actual

---

[2] Now that Priority has taken the surprising position suggesting the contract's resolution process is not relevant, it is necessary for this Court to review same. As such, Defendants have filed under seal the confidential agreements referenced herein, which include the DSA and the Operating Agreement.

litigation is imminent, or that a threat of litigation was expressed or implied in the parties' exchange of letters. Parties are permitted to engage in dialogue expressing different views without one of them rushing to involve the courts prematurely while such dialogue occurs. Indeed, over seven weeks have passed since Priority filed this action and Defendants have not instituted any court action or arbitration, nor have they threatened to do so. This fact, in itself, establishes that Priority's filing of this action was wholly unnecessary and precipitous, and apparently done as some strategic move to attempt to derail another litigation in Philadelphia federal court in which the same attorneys representing Priority in this case are also representing a different party, Express Scripts, Inc.

Plaintiff asserts that Defendants' letters represent a "clear threat" to Priority in an effort to justify filing this premature action for declaratory relief. In support of its position, Plaintiff refers to a single sentence in a single letter from Defendants, which states, "[i]n light of Priority's express refusal to comply with its contractual obligations and due to the likelihood that disputes relating to Priority's breaches of its agreements with ASP and Aetna Health will be resolved in adversarial proceedings..." *See* D.I. 10 at 4. However, Plaintiff conveniently fails to mention that, to the extent there might be "adversarial" proceedings as referred to by Defendants, they cannot be judicial proceedings. Rather, the proceedings would be the alternative dispute resolution process to which both parties are contractually bound pursuant to the DSA. Priority apparently desires to circumvent that process by precipitously involving this Court, instead of following the contractual process outlined in the DSA.

Moreover, Plaintiff cannot point to any language in the letters which demonstrate that Defendants explicitly repudiated the DSA or provided any indication that litigation *in the courts of equity* was imminent. The only thing these letters indicate is Defendants' willingness to

proceed under the terms of the DSA and the detailed dispute resolution process governing the parties' contract.

*MedImmune* is further distinguishable in a second respect. In *MedImmune*, because the "imminence" of the litigation was undisputed by the defendant, the court also considered the gravity of the adverse consequences that would befall the plaintiff should the court deny declaratory relief. The Court noted that if defendants were to bring an infringement action, the plaintiff could be ordered to pay treble damages and could be enjoined from selling the patented drug at issue, which comprised more than 80% of its revenue. Here, however, Priority has experienced no such coercive action and has not even alleged a threatened injury of such gravity. Defendant did not and is not actively contesting Plaintiff's legal rights under the DSA.

Unlike the situation alleged in *MedImmune*, Priority nowhere alleges a "substantial controversy" of such drastic consequences, and of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 127 S.Ct. at 771.

    B.    <u>**This Court Should Exercise Its Discretion to Decline Subject Matter Jurisdiction Because Prospects for Non-Judicial Resolution Remain**</u>

        (1)    <u>**The Court Should Dismiss This Action Because the Record Demonstrates Plaintiff Ended The Discussions Prematurely**</u>

Plaintiff misstates the law when it claims there is no "legal or factual basis" to support this Court's exercise of discretion to dismiss this declaratory judgment action. Contrary to what the Plaintiff would like to believe, no "unusual" circumstances are required for the court to exercise its discretion to dismiss a declaratory judgment action. Rather, it is Priority's burden to establish the circumstances warrant this Court's exercise of discretion to intervene through the Declaratory Judgment Act.

In fact, even if a court finds that the constitutional and statutory "actual case or controversy" requirements are met, the court is under no duty to exercise declaratory judgment jurisdiction. *Wilton v. Seven Falls Co.*, 115 S. Ct, 2137, 2143 (1995) (rejecting the argument that district courts are authorized to decline declaratory judgment jurisdiction only in "exceptional circumstances"); *see also EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (C.A.Fed. 1996) *overruled in part on other grounds, MedImmune v. Genentech, Inc.*, 127 S.Ct. 764 (2007). The Declaratory Judgment Act merely "creates an opportunity, rather than a duty, to grant a new form of relief to *qualifying* litigants." *Wilton*, 115 S.Ct. at 2143 (emphasis added). Moreover, courts are vested with such discretion "because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution are peculiarly within their grasp." *Id.*

Critically, the Supreme Court in *MedImmune*, upon which the Plaintiff relies so heavily, declined to address the dismissal of the declaratory judgment claim on discretionary grounds. *MedImmune*, 127 S.Ct. at 776. Instead, the court in *MedImmune* left the "equitable, prudential, and policy arguments in favor of such a discretionary dismissal for the lower courts' consideration on remand." *Id.* at 777 (*citing Wilton*, 115 S.Ct. at 289). Similarly, the court in *MedImmune* left for consideration on remand any merits-based arguments for denial of declaratory relief. Thus, while a court may conclude that ongoing negotiations do not negate the presence of a controversy for jurisdictional purposes, the court may nonetheless find that the need for judicial relief is not as compelling as in cases in which there is **no real prospect of a non-judicial resolution of the dispute**. *EMC Corp. v. Norand Corp.*, 89 F.3d at 814.

For example, in *Davox Corp. v. Digital Sys. Int'l, Inc.*, the court exercised its discretion to decline jurisdiction over a declaratory judgment action in which the plaintiff filed suit while still engaged in negotiations with the patentee. 846 F. Supp 144, 148 (D. Mass. 1993).

5

Dismissal was proper, the court observed, because, in determining whether to exercise discretion to dismiss a declaratory judgment action, the court may consider whether plaintiff's conduct in filing the action is "inconsistent with the sound policy of promoting extrajudicial dispute resolution, and conservation of judicial resources." *Id.* Rather than initiate preemptive litigation, the court noted that defendant had sent letters to plaintiff that were ominous enough to generate a reasonable apprehension of a lawsuit, but also invited plaintiff to address concerns and attempt to avoid potentially expensive and time-consuming litigation based upon misunderstandings rather than informed, intractable disagreements. *Id.* As a result, the Court found that plaintiff's response to defendant's inquiry regarding the allegedly infringing product could have initiated various courses of dealing between the parties that would have fallen short of litigation. *Id.*

In further justifying its discretion to dismiss the declaratory judgment action, the court aptly stated:

> [a]s federal court calendars become increasingly burdened, attorneys should exercise a correspondingly increased responsibility to attempt to resolve disputes without using limited judicial resources to decide issues which might, by reasonable discussions between reasonable people, be settled out of court. Potential plaintiffs should be encouraged to attempt settlement discussions (in good faith and with dispatch) prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing....

*Id.* (*citing Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742, 747 (D.C.N.Y. 1977).

Indeed, federal district courts will exercise liberal discretion to dismiss an action for declaratory judgment where evidence demonstrates a desire to continue discussions or negotiations. *EMC Corp. v. Norand Corp.*, 89 F.3d at 815 (exercising discretion and declining to exercise jurisdiction where negotiations over sale or licensing of patent were ongoing up to the time of the complaint, there was no suggestion that defendants' participation in negotiations was pretextual, and declaratory judgment proceedings would provide plaintiff with more favorable

bargaining position); s*ee also NSI Corp. v. Showco, Inc.*, 843 F. Supp. 642, 645-46 (D. Or. 1994). (declaratory judgment plaintiff "took advantage of the fact that [patentee] had deferred the filing of expensive and probably protracted litigation because of its belief that settlement negotiations were under way"); *Bausch & Lomb Inc. v. Alcide Corp.*, 684 F. Supp. 1155, 1160 (W.D.N.Y. 1987) (refusing to exercise declaratory judgment jurisdiction over suit filed after plaintiff received letter accusing plaintiff of trademark infringement but which presented an opportunity to resolve the matter out of court, and stating, "[t]o allow this action to proceed would be to discourage such good faith effort to negotiate").

Like the petitioner in *Davox*, Priority could have initiated a variety of "courses of dealing" with Defendant to avoid clogging the courts with a premature declaratory judgment claim. At a minimum, prior to rushing to file its action in this Court, Priority could have first attempted (and exhausted) the contract's alternative dispute resolution procedures – procedures which Priority itself expressly agreed to utilize pursuant to the DSA. Instead, by filing this action in Court, Plaintiff is attempting to circumvent these alternative dispute resolution procedures for some agenda in a different litigation. Tellingly, Plaintiff filed this action the same day the parties allegedly "met and conferred" but, according to Priority, were "not able to resolve their differences." *See* D.I. 1 at 7. After filing this Complaint in such a precipitous fashion, Plaintiff then conveniently used it as an "exhibit" in the Philadelphia federal court action by Express Scripts, Inc., which is represented by the same counsel who are obviously employing a coordinated procedural strategy to have that other case transferred to this Court.

Such a forum shopping strategy is another reason for this Court to decline to exercise its discretionary jurisdiction under the Declaratory Judgment Act.

### (2) The Court Should Dismiss This Action Because the Terms of the DSA Provide an Alternative Dispute Resolution Process With Which Plaintiff Has Utterly Disregarded

The contract governing the rights between the Parties here provides a dispute resolution process which Plaintiff has utterly ignored. On this ground alone, the Court should exercise its discretion to decline subject matter jurisdiction under the Declaratory Judgment Act.

Plaintiff's claims that it has "not failed to comply with any contractual dispute resolution process" (D.I. 10 at 2), and that the DSA "does not incorporate a dispute resolution process" (*Id.* at 11), completely ignores the contract's dispute resolution provisions.

Pursuant to Section 9.11 of the DSA, Article XIII of the parties' Operating Agreement governs disputes between the parties. *See* DSA, filed under seal as Exhibit "A"; Operating Agreement, Article XIII, filed under seal as Exhibit "B". Article XIII of the Operating Agreement provides that the parties engage in a detailed two-step process to resolve any "Dispute". First, Section 13.1 of Article XIII establishes an internal hierarchy to facilitate resolutions of any "Disputes". *Id.*[3] Second, where the parties are unable to resolve their Dispute through the internal hierarchy process, Section 13.2 of Article XIII provides that the Dispute "shall be submitted to mandatory and binding arbitration." *Id.* The contract then sets forth specific procedures for such arbitration.

---

[3] Section 13.1 states in relevant part: "Except as otherwise expressly set forth herein or in any ancillary Agreement, any dispute, controversy or claim including a failure to resolve the matter giving rise to a Breach Notice (a "Dispute"), whether based on contract, tort, statute, regulation, fraud, misrepresentation or any other legal theory (i) between a Member and/or Affiliate thereof, on the one hand, and any other Member and/or any affiliate thereof on the other hand (a "Direct Dispute"), or (ii) between a Member and/or any Affiliate, on the one hand, and the Company on the other hand (an "Indirect Dispute", that arises out of or relates to this Operating Agreement, and Ancillary Agreement or any obligations or related services to be provided hereunder or thereunder, or the enforceability or validity thereof, including, without limitation, assertions as to the inducement hereof or thereof by fraud or otherwise and the determination of the scope and applicability of the Parties' agreement to submit to alternative resolution, including binding arbitration, shall be resolved in accordance with the procedures described in this Article XIII."

In the event of a definable "Dispute" between the parties, Article XIII first contemplates the execution of an internal hierarchy process to enable the parties to meet as they "reasonably deem necessary to discuss the problem in an effort to resolve the Dispute *without the necessity of a formal proceeding.*" *Id.* The resolution of disputes through this internal hierarchy process requires, *inter alia*, the appointment of designated representatives, written notices, good faith efforts to resolve, and meetings and deadlines for responses which, if not fruitful, ultimately require the Dispute to be presented to the Chief Executive Officer of Priority and the Senior Vice President and Head of Specialty Products of Aetna. *Id.* None of this occurred with respect to the dispute Priority seeks to assert in this action. Indeed, Priority's Complaint does not plead that any of it occurred.

In the event that such officers are unable to resolve the Dispute, then the Dispute "shall be submitted to arbitration in accordance with Section 13.2." *Id.* Moreover, the contract additionally provides an option to accelerate through the hierarchy procedures, providing a quicker avenue to mandatory arbitration, so long as the parties' interests "are not materially prejudiced by such acceleration." *Id.* Again, none of this occurred. Nor does Priority's Complaint plead that it occurred.

Following a failure to resolve a Dispute within the hierarchical inter-party dispute resolution process, Section 13.2 of Article XIII provides that arbitration proceedings be initiated by serving an "Arbitration Demand" on the other party, followed by a series of written exchanges including answers, counterclaims, affirmative defenses and corresponding responses. *Id.* The arbitration is to be heard by a three arbitrator panel, subject to parties' compliance with additional procedures regarding the selection of such arbitrators. *Id.* The Arbitrators are

empowered to order "whatever relief, legal or equitable, they deem appropriate under the circumstances…" *Id.*

Despite ignoring this clause and not pleading any of the foregoing in its Complaint, Priority belatedly suggests in its response to the Motion to Dismiss that further discussions and negotiations were "futile." But, even if Priority genuinely believed that to be the case, it could have availed itself of Article XIII's acceleration clause to proceed through the process in a more expeditious fashion. *Id.* It did not. Instead, it sought an end-run around its contractual obligations by filing the instant action in this Court.

Tellingly, Plaintiff failed to address DSA Section 9.11, which provides for the parties to submit disputes to a dispute resolution process that includes binding arbitration. Although Section 13.3 of Article XIII permits any party to seek from the court a temporary restraining order or other temporary or preliminary injunctive relief or other provisional relief pending final resolution of a Dispute pursuant to Section 13.1 (inter-party hierarchical resolution process) or Section 13.2 (arbitration proceedings), no such emergency relief is necessary here. Indeed, Plaintiff does not even seek such relief here, and its failure to do so despite the passage of so many weeks further show such relief is unnecessary.

Even assuming, *arguendo*, that such request for relief is appropriate in this Court, it is still premature under Section 13.3 as it was not filed "pending final resolution" of any dispute pursuant to the contractually obligated alternative dispute resolution procedures. Indeed, there is no such dispute filed in arbitration at this point. Thus, no such proceeding is "pending" for "final resolution."

## IV.  CONCLUSION

Based on the foregoing, this Court should dismiss the Complaint because there is no "case or controversy," and no subject matter jurisdiction. Further, this Court should use its liberal discretion to decline jurisdiction under the Declaratory Judgment Act and Plaintiff is using this action as a strategic procedural tool to undermine ongoing litigation in another district court.

Date: May 5, 2008

Of Counsel:
John M. Elliott
Frederick P. Santarelli
James C. Crumlish, III
John P. Elliott
925 Harvest Drive
Blue Bell, PA 19422
Tel: (215) 977-1000
jme@elliottgreenleaf.com
fps@elliottgreenleaf.com
jcc@elliottgreenleaf.com
jpe@elliottgreenleaf.com

Respectfully submitted,

ELLIOTT GREENLEAF
   & SIEDZIKOWSKI, P.C.

/s/ *William M. Kelleher*
William M. Kelleher (#3961)
Neil R. Lapinski (#3645)
1000 West Street
Suite 1440
Wilmington, DE  19801
Tel:  (302) 384-9400, ext. 3
wmk@elliottgreenleaf.com
nrl@elliottgreenleaf.com

*Attorneys for Defendants,*
*Aetna Specialty Pharmacy, LLC*
*And Aetna Health Holdings, LLC*

# EXHIBIT A

# REDACTED IN THE ENTIRETY

# EXHIBIT B

# REDACTED IN THE ENTIRETY

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon the persons and in the manner indicated below:

### Via Electronic Filing and Service

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Potter Anderson & Corroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiff
Priority Healthcare Corporation*

Dated: May 5, 2008        /s/ *William M. Kelleher*
                          William M. Kelleher (I.D. No. 3961)

EAW: 92400v1